D. L. FAIR LUMBER CO. v. WEEMS.

ON SUGGESTION OF ERROR.

(In Banc.   Feb. 14, 1944.)

[16 So. (2d) 770.   No. 35358.]

202

**E. M. Livingston,** of Louisville, and **Nichols & Huff,** of Forest, for appellants.

204

**O. B. Triplett, Jr.,** of Forest, for appellee.

E. M. Livingston, of Louisville, and Nichols & Huff, of Forest, for appellants, in response to inquiry by the court.

**O. B. Triplett, Jr.,** of Forest, for appellee, in response to inquiry by the court.

210

214

Argued orally by **E. M. Livingston** and **J. Knox Huff**, for appellant, and by **O. B. Triplett, Jr.**, for appellee.

On Suggestion of Error.

**McGehee, J.**, delivered the opinion of the court on suggestion of error.

The appellee, Weems, recovered a judgment in the court below against the appellant, D. L. Fair Lumber Company, and one James Willis, for the sum of $400 actual damages and $700 punitive damages, and from which judgment the lumber company alone has prosecuted this appeal.

On a former day of the term we reversed and remanded the cause for the assessment of actual damages only, the

majority of the judges being then of the opinion that punitive damages should not have been awarded as against the D. L. Fair Lumber Co.

Upon a reconsideration of the case the court has concluded that the evidence in support of the claim for actual damages is sufficient to support the verdict to the extent of $247.75, and that, therefore, a judgment should be rendered here for that amount. Now three of the judges are of the opinion that the proof justified the submission to the jury of the issue as to punitive damages against both of the defendants and that the award in that behalf should be accordingly affirmed. Hence the former opinion, reported in 15 So. (2d) 505, is withdrawn, the judgment of reversal and remand is set aside, and this opinion, affirming the judgment for actual damages to the extent above indicated and the award of punitive damages, is substituted as the decision of the issues involved.

The proof discloses that the appellant lumber company became the owner of the timber situated on certain lands which were subsequently leased by the landowners to the appellee, Weems, as a pasture. The lessee of the pasture lands paid as a consideration therefor for the first year the sum of $200 in cash and agreed to repair the fences which then enclosed the same, the cost of which repairs amounted to about $150, and he had the option to renew his lease at the end of that year. He was pasturing about 77 head of cattle in this enclosure when the lumber company employed the defendant Willis to cut and remove the timber thereon at an agreed price per thousand feet.

When Willis undertook to cut and remove the timber, the appellee, Weems, the lessee of the pasture as aforesaid, granted him the use of his barns, advised him of the presence of the cattle in the pasture, and requested that in the event the said Willis should cut any trees on the fence, he should repair the same before leaving the premises in order that the cattle might not escape

through any broken places therein. Willis promised to do this, but failed to comply with his agreement in that behalf. He began cutting the timber in the early part of May, causing many trees to fall on the fence and tear it down to such an extent that the cattle began escaping from the pasture. Thereupon Weems made complaint to Willis repeatedly about cutting the trees on the fence and causing his cattle to escape, and with the result that Willis took the position that he could not repair the fence day by day or week after week as he tore it down, stating that after he had finished cutting the timber he would put up the fence before leaving the premises. The cutting of the timber, however, continued over a period of three or four months, and, in the meantime, the fence was destroyed, by the falling of the trees, for a distance of from one-fourth to one-half of a mile, with intervening breaks or gaps therein, such as to permit the cattle to escape at will.

There was testimony to the effect that the lessee, Weems, employed a negro to repair the fence while the timber cutting was in progress but that Willis would not permit the negro to do so. Complaint was also made during the month of May to the appellant lumber company with regard to the activities of the said Willis, and to which complaint the lumber company replied that "Willis has promised to be careful of the fence and to repair any damage which he causes before he leaves the premises." The lumber company was thereafter advised that Willis had not repaired the fence, and was continuing to destroy the same by cutting timber thereon. In fact, a representative of the lumber company visited the scene and saw what was being done, but the said company continued to permit Willis to violate its own duty to the landowners and his duty both to the lumber company, the landowners, and their lessee, of using reasonable care not to unnecessarily injure the improvements on the land.

That the lumber company, having continued in its ownership of the timber, which was being cut and removed by Willis, whether as an independent contractor or as its agent, was under a duty to the landowners, by virtue of the relationship created by the timber deed, to see to it that, in the exercise of its rights as holder of the easement to cut and removed the timber, due and reasonable care should be taken not to unnecessarily injure the property of the landowners, is supported by both reason and authority. United States v. Bostwick, 94 U. S. 53, 4 Otto 53, 24 L. Ed. 65; Jones v. Friedenburg, 66 Ga. 505, 42 Am. Rep. 86; Powell v. Dayton, etc., R. R., 16 Or. 33, 16 P. 863, 8 Am. St. Rep. 251; 62 C. J. 1092; 21 C. J. S., Covenants, Sec. 22, p. 898; 32 Am. Jur. 189, 665, 669; 1 Taylor, Landlord and Tenant (9th Ed.), p. 428; Comyns, Landlord and Tenant, 188. See also City Council of Greenville v. White, 194 Miss. 145, 11 So. ( 2d) 816. It could not delegate this responsibility to a third person in such manner as to be relieved of liability for a violation of its duty in that behalf. Moreover, the lessee of the pasture land had such an interest in the fence which enclosed the same as to entitle him to have the fence left unimpaired by any unnecessary damage to or destruction of the same, in order that it might constitute an effective enclosure for the cattle which were known to be pastured therein.

The jury was warranted in finding from the testimony, including that of some of the witnesses for the defendant, that it was not reasonably necessary for the trees to be cut so as to fall on the fence, and the jurors were entitled to use their own judgment and common experience and to reach the conclusion that standing timber adjacent to a fence may be cut in such manner as to be felled in another direction therefrom, except in such instances where the trees happen to be leaning toward the same, —at any rate, they were justified in finding from the proof of the fact that a sufficient number of trees had fallen across the fence to destroy it for a quarter or

half of a mile as complained of, that no sort of care was exercised to prevent the destruction of the enclosure, and that no proper regard was shown for the rights of the lessee of the pasture either in the destruction of the fence or in the refusal to repair, as charged in the declaration, either during the period of the timber cutting, or thereafter; also, that no one would needlessly destroy a fence, as was done in this case, and to so great an extent with any intention of repairing it at all at so much trouble and expense as would have been entailed.

Such actual damages as we think were recoverable under the proof are claimed to have resulted from the loss of cattle by straying from the pasture, expense of corralling the escaping cattle and renting a temporary enclosure for them, loss of sub-rentals on the pasture, and the expense incurred and time lost by the lessee in going to and from the premises in order to reduce his damages by preventing the escape and loss of more cattle from the enclosure, a majority of the judges being of the opinion that the items of such actual damages as are claimed from other considerations are not recoverable under the facts of this case.

On the question of punitive damages, the affirming judges are of the opinion, as hereinbefore indicated, that the owner of the timber standing on the land of another owes the latter the duty to use reasonable care in removing the timber so as not to injure the other's property; and this duty is owed likewise to a tenant of the landowner so far as concerns the possession and use of tenant. The obligation is one put in or raised by the law and results from the relation of the timber owner and the owner of the land at the time of the removal of the timber, without the necessity of any contract between them so prescribing. The duty, moreover, is nondelegable, else the timber owner would have the power to place its performance in the hands of a party wholly without moral or financial responsibility and thus strip the landowner of any effective remedy for violation of the stated duty,

however gross and oppressive, other than a recourse to the nonlegal preventive remedy of force and violence.

Therefore, the timber owner may not commit the work of the removal of the timber to an independent contractor and thereby escape responsibility for negligent and unnecessary injury to the property of the landowner or his tenant; and as to such injury the so-called independent contractor will be deemed the servant or employee of the timber owner, and the latter will be liable to the landowner or his tenant for negligent and unnecessary injuries to the same extent and as fully as had the damage been done by the timber owner himself.

It is conceded by every member of the court that what has been stated in the two foregoing paragraphs is true as to actual damage negligently and unnecessarily done in the removal of the timber and that as to such actual damage the independent contractor occupies no such a status, but is an employee or agent of the timber owner, whatever the contract between them may be. The contention is made, however, that upon the issue of punitive damages for gross or wilful negligence on the part of the person employed to remove the timber, that person will be an independent contractor acting, not for the timber owner who placed him there to remove the timber, but for himself and as his own man, if his contract with the timber owner was that of an independent contractor,—in other words, as to actual damages the person removing the timber is the agent or employee of the timber owner, but as to punitive damages he is no such agent or employee, but acts for himself alone.

As has been stated, it is the duty of the timber owner in removing the timber to do so in a manner whereby the land and the other property thereon and belonging thereto will not be negligently or unnecessarily injured, and that he may not rid himself of this obligation by committing its performance to another. Since, then, this duty prohibits negligent performance, it prohibits for the stronger reason a grossly or wilfully negligent per-

formance, and to attempt to separate them so as to make the performer the agent or employee as to negligence but not as to gross negligence, is no more than an attempt, in another, although perhaps more subtle form, to revive the ancient contention that the doctrine respondeat superior applies only to actual or compensatory damages, —a contention which was rejected and the contrary established in the leading case in this State, New Orleans, etc., R. Co. v. Bailey, 40 Miss. 395, which has never been departed from in the slightest but has been reaffirmed in perhaps a hundred other cases since. We have throughout our judicial history rejected the doctrine maintained in a few jurisdictions that an employer, in order to be held in punitive damages, must have ratified the gross or wilful breach of duty done by the person employed by him, but in the case now before us, even if this were required, the facts are that the general agent of the timber owner having superior charge of such matters was fully informed of what was being done by the so-called independent contractor, and this general agent went actually upon the ground during the month of July and confesses that he there saw that something like half a mile of this fence had been knocked down by the employee, yet nothing was done about it except to allow this employee to go on doing as he had done until in August, at which time the damage had reached about three-quarters of a mile of fence injured or destroyed. There is no room to talk about any injustice to the timber owner by the judgment or punitive damages in this case. He actually saw the damage going on, yet he put his hands in his pocket, did nothing about it, except to insist that he had no part in it—that it was being done by an independent contractor.

Nor may escape be made by the contention that the duty which here was so wilfully and oppressively flouted was one arising by contract and that punitive damages may not be recovered for a mere contract violation. We have held, and now reaffirm it, that punitive damages

may be recovered for breach of contract when the breach is attended by such gross negligence or willful wrong as to amount to a tort, Hood v. Moffett, 109 Miss. 757, 69 So. 664, L. R. A. 1916B, 622, Ann. Cas. 1917E, 410, American Ry. Express Co. v. Bailey, 142 Miss. 622, 107 So. 761; and it needs no authority to sustain the proposition that the breaking down and destruction of another's fence is a tort, and when done under circumstances of such gross and persistent wrong as to manifest an indifference to the consequences and of the rights of others, that it is a tort which will justify punitive damages; and that is what the jury found, and was well supported by the evidence and finding in this case.

The verdict of the jury and judgment of the court below must, therefore, be affirmed in accordance with the views hereinbefore expressed, that is to say, as modified allowing a recovery to the extent only of $247.75 instead of $400, as actual damages, and the amount of punitive damages in the sum of $700 awarded by the jury.

Affirmed.