NASIF, et al. *v.* HAWKINS.

Division A.   Dec. 17, 1951.

No. 38050 (55 So. (2d) 497)

J. D. Thames, and Barnett, Jones & Montgomery, for appellants.

836

Vollor, Teller & Biedenharn, for appellee.

**Lee, J.**

H. H. Hawkins instituted suit against Ellis Nasif, Murad Nasif and Norman Nasif, brothers, and Victoria F. Nasif, wife of Ellis Nasif, to recover for alleged damages to his building. The declaration contained several counts. The gravamen of the complaint was that the defendants had violated the provisions of Section 1006, Code of 1942, and Sections 801-1 and 801-2(c) of the Building Code of the City of Vicksburg, and that such violations proximately caused the damage to his building.

The defendants, in their answer, denied that the work, which they did, caused any damage. They alleged that the Hawkins building was old and out of repair, and that the condition existed prior to the acts complained of. They denied the alleged violation of the statute and ordinances, and alleged that a contract was made with George T. Booth & Sons to do the work, and if any damage was caused by a negligent installation, such negligence was that of the contractor, for which they were not responsible. They also denied that there was a partnership or joint venture between them, and alleged that Murad Nasif alone had charge of the whole alteration, and that Ellis Nasif had nothing whatever to do with it.

At the close of the evidence, the court granted directed verdicts for Norman and Mrs. Victoria F. Nasif, and the jury returned a verdict against Ellis and Murad Nasif for $25,585.00. From the judgment entered thereon, they appeal.

Hawkins owned a substantial three story brick building, fronting on Washington Street, in the City of Vicksburg. Immediately north and adjacent thereto stood the two story Seay building. Between these two structures was a party wall, sustaining both. Murad Nasif tried to lease the Seay building from the owner, but without success. Ellis Nasif obtained a five year lease, in writing, and put Murad in possession to operate a cafe, to be known as "Derby Grill". Murad deemed it necessary to make certain alterations and changes, among which was the relocation of the sewerage system from the north to the south side of the building. He engaged an architect to prepare plans for all of the changes. The first plumbing contractor did not finish the work. The Booth Plumbing Company was then awarded the contract.

The manner of this installation was as follows: A ditch was dug on the inside of the Seay building, about 2½ feet from and parallel with the party wall. It extended from the rear of the building to the street, where

the connection was to be made with the municipal system. It was about 20 inches wide, and at the source was about 16 inches deep. This depth increased to 4 or 5 feet near the front of the building, and it was even deeper in the street. The ditch was completed in the afternoon of April 27, 1949, but the sewer pipes were not laid. On the contrary, the ditch was left open without underpinning, support, sheet piling or bracing to preserve the party wall. That night there was a heavy rain, and the water was backed up in the ditch. Early the next morning, cracks in the wall and a settling of the building were observed. When this condition was called to the attention of the building inspector of the City, he ordered the ditch filled and the building shored.

Two witnesses for the plaintiff, the building inspector and an architect, testified that the damage to the building was caused from the rain water in the ditch dug below the foundation of the party wall, seeping under and undermining it. On the contrary, several witnesses for the defendants testified that, if damage did result to the building, it was due to the inherent weakness of the wall on account of its age, lack of footings on the Hawkins side and structural defects; and that the digging of the ditch and the presence of water therein neither caused nor contributed to the damage. This conflict in the evidence as to the cause of the damage made an issue for the jury, which they resolved in favor of the plaintiff.

The relative contentions of the parties may be succinctly stated as follows: Appellee contends that the party wall could not be damaged or altered so as to render it less valuable; that the prohibition against damage or alteration of a party wall is absolute, and the duty to refrain from so doing is nondelegable; that the appellants could not by the employment of an independent contractor exculpate themselves from liability; and that the digging of the ditch, without precautionary measures, and leaving it open for the night, resulted in the ditch being filled with rain water on account of which the wall

was undermined and damaged with the consequent injury to the building.

Appellants contend that the installation of sewerage, which includes the digging of ditches, is a simple operation that is not illegal, constitutes no nuisance, and is not essentially dangerous to others; that they had the right to, and did, employ an independent contractor to do the work; and that, if the acts complained about constituted negligence, the independent contractor alone is responsible.

The question for determination, therefore, is whether or not appellants can escape liability because of the contract with Booth Plumbing Company, an independent contractor.

Section 1006, Code of 1942, is as follows: "Party wall not removed or impaired in value.—Any party wall which has been paid for, and is used as such, shall not be removed by either party without the consent of the other; *nor shall it be so damaged or altered as to render it less valuable to either. And if either party violate this provision he shall be liable to the other as a trespasser for all damages that may be sustained.*" (Emphasis supplied.)

Section 801-1 of the City Building Code is as follows: "Until provision for permanent support has been made, excavations shall be properly guarded and protected to prevent the same from becoming dangerous to life or limb, and, when necessary, shall be sheet-piled and braced to prevent the adjoining earth from caving in, by the person causing the excavation to be made."

Section 801-2(c) is as follows: "In case there is a party wall along a lot line of the premises where an excavation is being made, the person causing the excavation to be made, shall at his own expense, preserve such party wall in as safe a condition as it was before the excavation was commenced and shall, when necessary, under-pin and support the same by proper foundations."

Ellis Nasif, under date of March 21, 1949, leased the Seay building for a period of five years, with the option to renew for another like period. He also purchased from the owner personal property in the building for a consideration of $5,000.00. While the lease authorized him to make alterations, it contained a further provision "that said lessee binds and obligates himself to comply with all city, state and federal laws in relation to said premises". It was also provided "that should said lessee * * * by his negligence cause any damage to the said premises * * * then the same shall be added to and treated as a part of the rent and shall be due and payable with the first succeeding installment of rent". While he was authorized to sell or transfer the lease, "such sale or transfer shall not relieve the said lessee from his primary obligation for the payment of the rents or other amounts due hereunder."

There is no concern here with the potential liability of the actual owner. ▪▪▪ So far as his lawsuit is concerned, Ellis Nasif was in possession, under a long-term lease. He was under the duty not to damage the party wall. This duty was nondelegable. Thus, he could not put his brother, Murad, in possession of the building and equipment and escape liability for Murad's negligence in damaging the party wall. By the same token, he could not delegate to Murad the authority to procure a contractor and escape liability for the negligence of such contractor in damaging the party wall. Murad testified that he paid Ellis for the personal property, but he had no bill of sale to that effect. He likewise testified that he rented the building from Ellis, but there was no writing to that effect. Ellis testified that, after he put Murad in possession, he had nothing further to do with the matter. But, according to the witness Bres, Ellis was present in the discussion at the time Bres was fired, and must have been fully aware of the contemplated improvements. Besides, immediately after the damage, Ellis, through his attorney in fact, agreed in writing with

the other interested parties to hire a contractor to shore up the building; and thereupon, with the other interested parties, entered into a contract in writing for that purpose.

The legal principle governing here was laid down in D. L. Fair Lumber Co. v. Weems, 196 Miss. 201, 16 So. (2d) 770, 772, 151 A. L. R. 631. In that case the Lumber Company owned the timber and Weems had leased the land for pasture purposes. The Lumber Company employed Willis to cut and remove the timber at an agreed price per thousand feet. In doing so, Willis unnecessarily damaged the fences and caused other loss to Weems. The Lumber Company contended that it was not liable to Weems because Willis was an independent contractor. This Court answered that contention as follows: ''That the lumber company, having continued in its ownership of the timber, which was being cut and removed by Willis, whether as an independent contractor or as its agent, was under a duty to the landowners, by virtue of the relationship created by the timber deed, to see to it that, in the exercise of its rights as holder of the easement to cut and remove the timber, due and reasonable care should be taken not to unnecessarily injure the property of the landowners, is supported by both reason and authority. (Citing authorities.) It could not delegate this responsibilty to a third person in such manner as to be relieved of liability for a violation of its duty in that behalf.''

Again, it was there said: ''* * * the owner of the timber standing on the land of another owes the latter the duty to use reasonable care in removing the timber so as not to injure the other's property; and this duty is owed likewise to a tenant of the landowner so far as concerns the possession and use of tenant.''

And, again, the Court there said: ''The duty, moreover, is nondelegable, else the timber owner would have the power to place its performance in the hands of a party wholly without moral or financial responsibility

and thus strip the landowner of any effective remedy for violation of the stated duty, however gross and oppressive, other than a recourse to the nonlegal preventive remedy of force and violence.

"Therefore, the timber owner may not commit the work of the removal of the timber to an independent contractor and thereby escape responsibility for negligent and unnecessary injury to the property of the landowner or his tenant; and as to such injury the so-called independent contractor will be deemed the servant or employee of the timber owner, and the latter will be liable to the land owner or his tenant for negligent and unnecessary injuries to the same extent and as fully as had the damage been done by the timber owner himself.''

The principle there stated was reaffirmed in Richton Tie & Timber Co. v. Smith, 210 Miss. 148, 48 So. (2d) 618.

This rule is not in conflict with the numerous authorities cited by appellants in their briefs. Some of those authorities expressly recognize it. For instance, it is said that "a municipal corporation is not, however, liable for the negligence of an independent contractor or his employees * * * unless the act or omission of the contractor is a violation of some primary and inalienable duty of the city * * *". Thompson on Negligence, vol. 5, Sec. 5803. Likewise, it was said in East St. Louis v. Murphy, 89 Ill. App. 22, "* * * where the party employing the contractor is under a primary and inalienable duty, either by express statute or implication of law, the rule does not apply * * *." See also City of Sterling v. Schiffmacher, 47 Ill. App. 141; Fields v. Johnston City, 143 Ill. App. 485. In Bennett v. Mt. Vernon, 124 Iowa 537, 100 N. W. 349, 350, it was said: "If the matter involved was one of positive duty to the plaintiff, then, of course, the defendant town could not relieve itself by delegating the work to an independent contractor. * * *"

The mere digging of a ditch ordinarily is a simple matter. But such digging near a party wall and to a

depth lower than the wall, and thereafter permitting rain water to fill the ditch and undermine the wall is not a simple matter at all. Such a course of conduct would be as effective to damage the wall as it would be for a workman to take a sledge hammer and break it up.

■■ It is undisputed that the contractor dug the ditch in the manner stated, and left it open for the night, and that it rained and that it was filled by rain water. The jury has found that the act of the contractor was the proximate cause of the damage to the wall and building. Yet, neither Ellis nor Murad Nasif could damage the wall with impunity, and neither could ''delegate this responsibility to a third person in such manner as to be relieved of liability for a violation of its (their) duty in that behalf'', as was said in Fair Lumber Co. v. Weems, supra.

It, therefore, follows that the lower court properly overruled the appellants' request for a directed verdict.

The plaintiff testified that the monthly rentals from the building aggregated $750.00; that the property was worth $75,000.00, and that, after the damage, he could sell it for only $40,000.00, causing a loss to him of $35,000.00. It was shown that the Vicksburg Real Estate Board, before the damage, had appraised the building, not including the lot, at $39,000.00 to $40,000.00. The architect, who made a thorough examination of the building a few days after the occurrence, was of the opinion that it should be taken down. However, he did make a rough estimate of the cost of repairing it from $22,000.00 to $25,000.00, though he was still doubtful that such repair would be feasible or would prove satisfactory. Several other witnesses deposed that the building was in good condition before the alleged damage. There was sufficient proof to sustain the amount of the verdict, and, on that account, it can not be held to be excessive.

Complaint is made at the giving of several instructions for the plaintiff, and the refusal to grant certain instructions for the defendants. Due consideration has been

given to these assignments. We think that the law was fully set forth in the plaintiff's instructions and that they were properly given. On the other hand, the defense instructions were not in accord with the governing principles, and were properly refused.

We find no prejudicial error in the record; and the court was fully justified in overruling the motion for a new trial.

Accordingly, the judgment of the lower court is affirmed.

Affirmed.