## NASIF, et al. *v.* BOOTH, et al.

May 10, 1954

No. 39220 64 Adv. S. 20 72 So. 2d 440

*John W. Prewitt,* Vicksburg; *Berger & Callon,* Natchez; *Satterfield, Ewing, Williams & Shell,* Jackson, for appellants.

*Brunini, Everett, Grantham & Quin,* Vicksburg, for appellees.

HALL, J.

This case is a sequel to Nasif v. Hawkins, 212 Miss. 834, 55 So. 2d 497. We there affirmed a judgment in favor of Hawkins and against the Nasifs for damages to his party wall between a building owned by Hawkins and a building known as the Seay building leased by Nasif in the City of Vicksburg. After paying off that judgment, the Nasifs brought this suit against George T. Booth, Sr., et al., operating a plumbing business as partners, to recover the amount which they had paid Hawkins under the judgment. From an adverse judgment in the second suit the Nasifs appeal.

The declaration was in four counts. The first count was upon an alleged express contract of indemnity; the second count was upon an alleged implied contract of indemnity; the third count was based upon negligence in violation of Section 1006, Code of 1942; and

the fourth count adopted all charges of negligence laid in the third count and in addition alleged an implied obligation to indemnify plaintiffs for such negligence. The lower court overruled a demurrer to the declaration which raised the question that two counts were based upon contract and two on tort. It then overruled a motion to strike counts one and two. Upon conclusion of the evidence for plaintiffs it sustained a motion to dismiss counts one and two, and submitted the cause to the jury on the question of negligence. The jury found for the defendants and judgment was entered accordingly.

After renting the Seay building the Nasifs employed an architect who prepared detailed plans and specifications for remodeling the interior thereof so as to turn it into a restaurant which they expected to open. The plumbing work was to be done under a separate contract. Appellees filed with appellants a written proposal to do this work for a specified amount, but appellants, while retaining this proposal, did not accept the same. On the contrary, they made arrangements with a competitor of appellees to do the work. This competitor entered upon the premises and started the work, first breaking up the concrete floor and opening a ditch about thirty inches from and parallel with the party wall, for the purpose of laying a sewer line. This ditch began near the rear of the Seay building and extended to a point about half the distance to the front of the building. It was along a line which the architect had specified on his plans and "lay-out" drawing for the plumbing installation. For some reason not disclosed by the record the appellants dispensed with the services of this plumber and then made an oral contract with appellees to complete the job at a slight increase in price over their original proposal. Appellees then entered upon the premises and completed the ditch along the line specified by the architect to the sewer main in the street in front of the building. They installed the connection

to the sewer main and laid and connected the sewer line from the main to a point just inside the Seay building. This was two or three days after appellees began working. Work hours for the day having ended, appellees and their employees left the job until the next morning. During that night there came the heaviest rainfall ever recorded by the weather bureau in Vicksburg for a thirty-minute period. It was described as a cloudburst. The ditch became wet and on the following morning it was discovered that the party wall had settled slightly and had cracked at a point about midway its length. The city building inspector was called and pronounced it dangerous and ordered it torn down.

There was a sharp conflict in the evidence as to where the water came from which got into the ditch. The appellants claimed and were supported by testimony which would have warranted the jury in believing that the water backed up from the street into the open ditch which was on a gradual slope all the way from the rear to the front of the building. On the other hand, there was evidence for the appellees which would have justified the jury in finding that the water did not back up into the inside of the building, but that some of it fell directly into the building from an uncovered space overhead near the front and that some of it seeped into the soil in the Hawkins building from the poor connections in a drainage line underneath the floor thereof which extended from and drained an open courtyard in the rear of the Hawkins building for the entire length of the building and into the street. Likewise there was a conflict in the evidence as to whether the banks of the ditch in the Seay building gave way and sloughed off, and as to whether the walls of the ditch should have been braced to prevent caving. We mention these conflicts as stepping stones to a consideration of the points raised by appellants.

It is contended that notwithstanding the fact that appellees only submitted a signed proposal to appellants,

which was never signed by appellants, that nevertheless it was accepted with oral modifications and thereby became an express contract of indemnity whereunder appellees agreed to indemnify and save harmless the appellants against anything that might happen to the party wall. Reliance is placed on the following provision of the proposal: ''The contractor is amply protected by Workmen's Compensation, Public Liability and property damage insurance in connection with all work executed by it on the purchaser's premises and assumes all risks, incident to the work done by it, provided for such insurance.'' It will be at once noted that the property damage insurance mentioned is only in connection with the work executed by appellees and the risks assumed by them are only incident to the work done by them. They did not agree to indemnify appellants for negligence of appellants' architect if he specified the sewer line to be laid too close to the party wall nor did they agree to indemnify appellants for the negligence, if any, of the plumber who had started the job before appellees took over, nor did they agree to indemnify appellants for the defects, if any, in the sewer drain which was already laid underneath the floor of the Hawkins building. As stated at the outset, the second count was upon an implied contract of indemnity, and it was alleged therein that this was an ''implied obligation on the part of the defendants to the plaintiffs to indemnify them from any liability or loss occasioned and proximately resulting to them by reason of and incident to the work done by the defendants under and by virtue of said contract''. The implied contract as alleged imposed no greater obligation on appellees than did the alleged express contract of indemnity.

■■ Appellants contend that the trial court erred in dismissing counts one and two of the declaration and that they were entitled to a peremptory instruction thereon. It is our opinion that the demurrer should have been sustained for the reason that the declaration clearly con-

tains two counts on contract and two on tort sounding in negligence, and consequently there was no error in dismissing the first two counts. Especially is this true since all the proof was directed to the issue of negligence. As we said in Potomac Insurance Co. v. Wilkinson, 213 Miss. 520, 526, 57 So. 2d 158, "The demurrer ought to have been sustained and an election between the two counts compelled." In that case there was one count in contract and one in tort. The appellants here had their choice as to the form of their cause of action. They could have brought it in contract or in tort, but not in both in the same action. Tort was the proper action here since the proof was directed to the issue of negligence. In 42 C. J. S., Indemnity, Section 28, page 609, it is said: "An indemnitee may proceed against his indemnitor by an action excontractu, on the contract or bond of indemnity, as by an action of assumpsit; or, where he seeks to recover for damages paid for injuries caused by the negligent or wrongful acts, he may proceed by action ex delicto. * * *"

 Even if appellants had proceeded on the first two counts, they would not have been entitled to a peremptory instruction because there was a disputed question of fact as to whether the damage to the wall resulted from and as an incident to the work done by appellees and such issue would have been for the jury to determine.

 On the day before the trial appellants filed a written motion to compel appellees to produce for inspection their insurance policies mentioned in the so-called express indemnity agreement above quoted. No action seems to have been taken thereon. Near the close of the trial, after counts one and two had been dismissed, appellants renewed their motion to compel production of the insurance policies and it was overruled, which action of the trial court is assigned as error. Conceding that the policies might have been relevant if the case had proceeded on the first count, it was certainly

not relevant in the trial of the negligence action and its admission would have been error under numerous holdings of this court, beginning with Herrin, Lambert & Co. v. Daly, 80 Miss. 340, 31 So. 790.

Appellants next complain that the following instruction granted to defendants was erroneous: "The court instructs the jury for the defendants that if you believe from the evidence in this case that the sole proximate cause for any damage to said party wall was an unforeseeable, unpredictable natural circumstance or an Act of God, or some hidden, unknown defect which neither of the parties hereto could reasonably foresee or anticipate and was not caused by any negligence on the part of the defendants, then you shall find for the defendants, George T. Booth & Sons."

Appellants first contend that an act of God is an affirmative defense which should be specially pleaded in accordance with Paragraph 4 of Section 1475.5, Code of 1942, which provides, in part: "If the defendant desire to prove by way of defense in an action, any affirmative matter in avoidance, which by law may have been proved heretofore under special plea, he shall set forth in his answer to the action such affirmative matter and incorporate such defense therein, otherwise such matter shall not be allowed to be proved at the trial * * *". The answer in this case averred that an unusually heavy rain occurred and that water seeped into the ditch from the Hawkins building, and it pleaded the improper, inadequate and insufficient drainage and conditions underneath the Hawkins building. Under the statute, if the appellants deemed these allegations of the answer insufficient they should have objected to the testimony as to the rainfall when it was proffered; the penalty of the statute is that if an affirmative defense is not specially pleaded, evidence in support of it shall not be admitted. Defendants proved at the trial that on the night in question there was an intense cloudburst which broke all weather records in Vicksburg for

a thirty-minute period. There was no objection whatever to this testimony and it went directly to the question of reasonable foreseecability which is mentioned in the instruction. Moreover, the instruction did not rest alone upon an act of God as the sole proximate cause, but it went further and told the jury that if there was some hidden, unknown defect which the parties could not reasonably foresee or anticipate, (evidently referring to the seepage from the drain maintained by Hawkins underneath the floor of his building) and that there was no negligence on the part of the defendants, then the jury should find for the defendants. It is argued that there was no evidence to support the instruction, but we do not agree with that contention, and, when all the instructions for both parties are considered together, the law as to negligence on the part of the defendants seems to have been fully and correctly stated to the jury.

Appellants contend finally that the verdict of the jury is against the overwhelming weight of the evidence. We have carefully reviewed the whole record and we think under the various conflicts in the evidence it preponderated in favor of the defendants, but this was a question for determination by the jury, and, the jury having decided the question, it is not our province to disturb its verdict. The judgment will therefore be affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Holmes* and *Gillespie, JJ.,* concur.