255 F.2d 482
 BOWYER & JOHNSON CONSTRUCTION COMPANY, and Cordova Sand & Gravel Company, Appellants,
v.
Joe WHITE et al., Trustees of Pleasant Grove C. M. E. Church in DeSoto County, Mississippi, Appellees.
 No. 16882.
 United States Court of Appeals Fifth Circuit.
 May 13, 1958.
 
 E. Cage Brewer, Jr., William O. Luckett, Semmes Luckett, Brewer & Brewer, and Roberson, Luckett & Roberson, Clarksdale, Miss., Leo Bearman, Memphis, Tenn., Robert M. Burton, Memphis, Tenn., of counsel, for appellants.
 Joel P. Walker, Jr., and Chatham & Walker, Hernando, Miss., for appellees.
 Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.
 JOHN R. BROWN, Circuit Judge.
 
 
 1
 This is an appeal from a judgment in favor of the Trustees of the Pleasant Grove Colored Methodist Episcopal Church entered by the Court after a non-jury trial against both a highway Contractor[1] and its Subcontractor[2] for destruction of this rural Mississippi Church by fire. Both Contractor and Subcontractor appeal from the joint judgment which, if paid by either, entitles the other under Mississippi law to contribution.
 
 
 2
 The case has its unusual aspects. Not the least of these is that each appellant urges that the plaintiffs (the Church) should prevail. The condition of this generosity is, of course, that each asserts that not it, but its co-defendant should be the one to pay. But the plaintiffs, accepting aid from whatever source and to whatever extent available, find themselves unable to translate this into a single effective judgment. The Contractor simply states that the plaintiffs should recover the full amount of the judgment ($7,250), but against the Subcontractor only. The Subcontractor, on the other hand, asserts that it should pay nothing for the destruction of the Church building itself since there was inadequate evidence to sustain the amount allowed for it ($6,000) and that as to the balance ($1,250) the judgment fixing liability should be sustained provided it remains jointly against Subcontractor and the Contractor. Like weights on the apothecary's scale, Contractor and plaintiffs are on one side, Subcontractor on the other on damages, while Subcontractor and plaintiffs are on one side, Contractor on the other on liability. Pursuing this figure further, in this state of equilibrium, withdrawing the plaintiff as the common weight should reveal which way the scales will tip between the two defendants.
 
 
 3
 And the merits of the cause show, we believe, that this is the correct approach independent of the tactical concessions of the competing defendant. For if the question of imputation of fault is put to one side, the record is clear that the Court had ample basis for the finding that the Church was destroyed by the negligent failure of the Subcontractor properly to attend the small fire it had intentionally set in cleaning up right-of-way trash, or in completely putting out the fire after it had burned through the adjacent cemetery and Subcontractor thought that it had been extinguished.
 
 
 4
 Equally so, we think, is the Court's finding of a $6,000 value for the building. This holding withstands the scrutiny of clearly erroneous, Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A. Starting with the sensible premise that there is in reality no genuine "market" for rural churches of this kind and character, the Court, after the value of the land was equalized by adequate proof of value "before and after," J. M. Griffin & Sons, Inc., v. Newton Butane Gas & Oil Co., 210 Miss. 797, 50 So.2d 370, was clearly authorized to give full application to Mississippi principles which take recognition of the practicable factors which may be considered. Sears, Roebuck & Co. v. Creekmore, 199 Miss. 48, 23 So.2d 250, 253. The Court was entitled to, and obviously did, take into account the uncontradicted testimony, both photographic and oral, from interested as well as disinterested witnesses familiar with this Church. They were unanimous that this congregation throughout its long life had taken exceptional care of this building by painting and maintaining it, and adding to it, from time to time, improvements which made it more usable. An estimate of value at $12,000 was given by one witness having some familiarity with building costs, and it was established that a new Church building was being constructed at a cost of some $12,000. Mississippi considers[3] that many factors may be evaluated, and as it is apparent that the Court in a practical way took into account age and obsolescence and actual depreciation, the figures on replacement cost, together with this other evidence, fully warranted the finding of $6,000.
 
 
 5
 We come then to the real controversy: was there any basis for holding the Contractor liable?
 
 
 6
 At the time of the occurrence, no employee of Contractor was on or near the project. It was not until months later that Contractor, for the first time, had any of its own employees at this job site. For a substantial period of time immediately before and after the occurrence, all of the work was done by employees of Subcontractor under the actual direction and control of Subcontractor's supervisory employees. The trash fire was started by Subcontractor's employees. Subcontractor's employees fought the fire when it got out of hand. Subcontractor's employees failed adequately to extinguish the fire.
 
 
 7
 If liability may be imposed on Contractor, it must be on some basis other than simple agency. For under the traditional principles of the right to exercise control over the manner and means of performing the work, which test Mississippi outlines with considerable refinement, Kisner v. Jackson, 159 Miss. 424, 132 So. 90, the relationship between Contractor and Subcontractor was that of an independent contract and not master-servant, principal-agent.
 
 
 8
 Plaintiffs and Subcontractor put forward two reasons why this conclusion is no real obstacle. First, the contract forbade subcontracting without express approval and imposed an unconditional liability on Contractor for all losses. Second, the work contracted for, envisaging some fires as it must have, was inherently dangerous.
 
 
 9
 With respect to the first, we do not think that the contract with the County prohibited subcontracting. The contract itself is silent. Reference is made to subcontractors only in the Proposal[4] which, on a prescribed Mississippi form, had to be filled out and filed with a bid deposit as a bid. At most, it made a representation as to the present only, and it contained no warranty or promise against subsequent subcontracts if the bid were accepted. The bid was submitted on Form 902 October 4, 1955, and accepted the same day by the execution of the formal contract (on Form Section 903). It was not until March 1 and 10, 1956, that the subcontract was tendered and accepted. Assuming that, as the base contract states: "* * * the proposal for the contract, * * * shall be held to be * * * a part of this contract by specific reference * * as if each * * * had been set out fully herein * * *," this was a part of the contract it does not, in our judgment, prohibit the subsequent use of sub-contractors at least in such a way as to impose a special liability on the contractor for having done so. The County and the State of Mississippi may well have their remedies, but the mere making of an unauthorized subcontract, without more, does not subject the contractor to liability to a third person for acts of the subcontractor. Walters v. American Bridge Co., 234 Pa. 7, 82 A. 1103; Seattle Lighting Co. v. Hawley, 54 Wash. 137, 103 P. 6; Wilkinson v. Light, Heat & Water Co., 78 Miss. 389, 28 So. 877; Wade v. Gray, 104 Miss. 151, 61 So. 168, 43 L.R.A.,N.S., 1046; Holmes v. T. M. Strider & Co., 186 Miss. 380, 189 So. 518, 123 A.L.R. 1190. This result is not changed by the general clause[5] imposing responsibility "for all loss or damage arising out of the nature of the work." This clause does not impose upon Contractor any greater liability for the acts of a subcontractor than would be imposed upon it directly. Clearly this clause was not intended to be the imposition of an absolute liability on Contractor for injuries and damages sustained by members of the public regardless of negligence. This undertaking is between the County and Contractor alone.
 
 
 10
 Nor, we think, does Fair Lumber Co. v. Weems, 196 Miss. 201, 16 So.2d 770, 151 A.L.R. 631, or cases like it, Crisler v. Ott, 72 Miss. 166, 16 So. 416; Transcontinental Gas Pipe Line Corp. v. Myrick, Miss., 51 So.2d 475, warrant imposing liability here on the Contractor. As we pointed out in analyzing the principle of the Weems case in applying it to destruction of Florida timber, Rayonier, Inc., v. Bryan, 5 Cir., 249 F.2d 405, 408, this non-delegable duty to exercise due care not to inflict unnecessary damage on the grantor's property arises out of the relation analogous to that of landlord and tenant. Here no such relationship exists. The plaintiffs are complete strangers to the Contractor as well as to the Subcontractor.
 
 
 11
 This leaves as the only remaining basis of liability the claim that the work contracted for was inherently dangerous. Whether fire, as such, is deemed by Mississippi to be within the class of inherently dangerous instrumentalities, we need not determine. Its dangers are, of course, recognized for "All must know that fire is a dangerous and destructive agency." Gloster Lumber Co. v. Wilkinson, 118 Miss. 289, 79 So. 96, 97. But at the same time, imposing no presumptions of negligence for fire damage. Mississippi apparently treats it no different from other forces. Robinson v. Turfitt, 192 Miss. 160, 4 So.2d 884, cited 24 A.L.R.2d 255.
 
 
 12
 Even if fire is inherently dangerous, this was not a contract to do such work. We may assume that the evidence supports an implied finding that those engaged in highway construction work may frequently light fires to burn trash or debris. There is no showing here, however, that such fires are necessary or that contractors or owners making construction agreements with contractors or subcontractors must be aware that the setting and handling of fires is an essential part of the work. Here, it was, at most, merely an incidental and convenient way for the Subcontractor to do the work of grubbing and clearing.
 
 
 13
 While Mississippi follows the usual principles on contracting out inherently dangerous work, Nasif v. Hawkins, 212 Miss. 834, 55 So.2d 497; Yazoo & M. V. R. Co. v. Gordon, 184 Miss. 855, 186 So. 631, we find no basis in this record or the Mississippi declarations to justify a holding that the mere likelihood that a subcontractor might use some fire at some time in the course of doing some of the work somewhere on the job either burdens the whole subcontract with this heavy liability or creates new and heavy obligations and nearly absolute liabilities when and as the fires are lit.
 
 
 14
 Finally, since the basic question arose from the fact that Contractor formally sought recovery over against Subcontractor (who was not originally a party defendant) through a third party impleader, F.R.C.P. 14(a), the full application of the doctrine of non-insulation through contracts for the performance of inherently dangerous work would not, as Subcontractor contends, justify the holding of both jointly liable.[6] The Subcontractor cannot, as it purports to do, urge this as a reason for affirming the judgment vis-a-vis plaintiffs and Contractor. As between the two defendants, Subcontractor is not in a position to contend that it was excused from the exercise of due care in performing the work it undertook to do, or that because a third party might pursue the owner-contractor directly, it too can push all or part of it off onto the party for whom it was done.[7] The Subcontractor impliedly agreed to perform in a workmanlike and prudent manner, i. e., free from negligence. If it has failed, as the Court's findings have established, it would have to make good the loss,[8] if any, thereby imposed on Contractor.
 
 
 15
 The result is that the judgment for the plaintiffs for the full amount allowed is affirmed against Subcontractor but reversed and rendered in favor of Contractor.
 
 
 16
 Affirmed in part and reversed and rendered in part.
 
 
 
 Notes:
 
 
 [1]
 Bowyer & Johnson Construction Company contracted October 4, 1955, with the Board of Supervisors of DeSoto County, Mississippi, for the construction and paving of three miles of road
 
 
 [2]
 Cordova Sand & Gravel Company, Inc. consummated letter subcontract of March 1, 1956, covering a substantial portion of the principal contract including, specifically, clearing and grubbing. The letter from Contractor, accepted by Subcontractor provided:
 "* * * we [Contractor] sub-contract to you a portion of the above Project. * * * The amount of this subcontract is $41,553.31. * * * We will deduct from this payment 10% as our portion and participation in this work. * * * This work is to be done according to plans and specifications and it is understood that all provisions and requirements of our original contract with the Division of State Aid Road Construction shall in effect exist between us. It is understood and agreed that you are to complete these items of work in their entirety and to the final approval of the Engineer. We agree to make payments to you as they are received by us from the Highway Department. * * *"
 
 
 [3]
 Sears, Roebuck & Co. v. Creekmore, supra, after pointing out that the "before and after" comparative market value principle is the general rule, states: "* * * Admittedly cases arise in which other factors are found which must be taken into account. * * * We do not pursue the distinctions arising out of the expressions `market value,' `intrinsic value,' or `fair cash value.' Property may have a determinable intrinsic or cash value wholly apart from the existence of an active market upon which quotations are regularly made. Nor do we hold that an estimate of replacement cost is never relevant. It may in a proper case become an aid in computing actual value."
 
 
 [4]
 The Proposal (this form was described as Section 902) provided: "In the event of award of the Contract to me (us) under this Proposal, I (we) contemplate the sub-contracting of the following items, to the persons or firms named after each item in accordance with Special Provisions providing for the sub-contracting attached hereto if such sub-contracting thereof is approved by the Board of Supervisors and the State Aid Engineer. In the event of disapproval of such sub-contracting I (we) agree to perform such item or items of work with my (our) own organization, in full compliance with all applicable terms of this Proposal
 "Note: Bidder will insert below a list of the specific Pay Items and Quantities thereof which he proposes to sub-contract, and the names and addresses of the persons or firms to whom he proposes to sub-contract each item.
 [here Pay Items are tabulated.]
 "I hereby certify that the persons or firms are named above as sub-contractors with the knowledge and consent of the persons or firms named.
 "Signed ................
 "In the event of the award of this contract to the above named bidder, for the performance of the work, and in the further event that the sub-contractor(s) named herein are approved by the Board of Supervisors and the State Aid Engineer, the sub-contractor or sub-contractors shall execute the following:
 "I (we) hereby certify that the use of our names as sub-contractors on the above items, was and is with our knowledge and consent."
 
 
 [5]
 The Contract (section 903) states:
 "It is further agreed that for the same consideration the undersigned contractor shall be responsible for all loss or damage arising out of the nature of the work aforesaid, or from the action of the elements, and unforeseen obstructions or difficulties which may be encountered in the prosecution of the same and for all risks of every description connected with the work for faithfully completing the whole work in good and workmanlike manner according to the approved Plans, Specifications, Special Provisions and requirements of the Board of Supervisors and the State Aid Engineer."
 
 
 [6]
 The formal judgment so provides, although the Court in its oral opinion indicated at most a primary-secondary liability:
 "As to who it is against, we think the judgment must be against both defendants according to the terms of the original contract. I think that Cordova Sand and Gravel Company should pay it, but if they do not pay the judgment, then the other party would be found for it."
 
 
 [7]
 That the mere classification of an undertaking as "inherently dangerous" does not affect all with the awesome liabilities of the doctrine is demonstrated by claims of employees of the Contractor against the Owner. In many jurisdictions such an employee cannot recover against the Owner on the ground that the work which his employer agreed to perform was inherently dangerous; the nondelegable duty does not run to him. Gulf Oil Corporation v. Wright, 5 Cir., 236 F.2d 46, 52; Sword v. Gulf Oil Corp., 5 Cir., 251 F.2d 829, 834; Hurst v. Gulf Oil Corp., 5 Cir., 251 F.2d 836, 838
 
 
 [8]
 This is recognized by Mississippi law in the sequel to Nasif v. Hawkins, 212 Miss. 834, 55 So.2d 497, so heavily pressed by Subcontractor in which the Owner was held liable to a third party because the work was inherently dangerous. The Owner thereafter sued his Contractor for negligently having performed this "inherently dangerous" contract. Nasif v. Booth, 221 Miss. 126, 72 So.2d 440; see, also, Granquist v. Crystal Springs Lumber Co., 190 Miss. 572, 1 So.2d 216, 219
 
 
 
 17
 HUTCHESON, Chief Judge (concurring in part and dissenting in part).
 
 
 18
 I concur in that part of the majority opinion which results in the affirmance of plaintiffs' judgment as against the appeal of Cordova Sand & Gravel Company.
 
 
 19
 For the reasons hereafter stated, I dissent from the result reached and the reasons given for that result in respect of Bowyer & Johnson's appeal.
 
 
 20
 With deference to my brothers, the errors of this part of their opinion are basic and fundamental. Indeed they spring from the complete ignoring of the effect of undisputed and controlling facts of record and an equally complete ignoring of hornbook law with respect to the defense of independent contractor upon which the opinion is made to turn. Because this is so, I shall not vie with the majority in debating propositions, most of which I believe to be irrelevant here, or in citing and discussing cases, most of which I believe to be without real bearing. In short, without piling Pelion on Ossa in stating and supporting the positions which I think the facts and the law compel me to take, I shall state them as categorically and as briefly as possible.
 
 
 21
 I begin, therefore, by saying that the district judge was correct in stating as his conclusion, "The judgment must be against both defendants according to the terms of the original contract. I think that the Cordova Sand and Gravel Company should pay it, but if they do not pay the judgment, then the other party would be bound for it."; and that to the extent that the judgment entered failed to provide for judgment over for defendant Bowyer, it was erroneous and should be reformed.
 
 
 22
 In going contrary to this view and absolving defendant Bowyer from liability to plaintiff, the majority opinion has made the defense of independent contractor automatic and self-acting in any case where the principal contractor employs a sub-contractor. It has done this against the contrary findings and conclusions of the district judge by making the defense operable as a matter of law on a record which not only does not support the view that his conclusions were erroneous but, on the contrary, is wholly lacking in any sufficient evidence that Cordova was an independent contractor within the true intent and meaning of the law in Mississippi and elsewhere which declares that it is not what the principal does but what he may do under the contract which is determinative. 39 C.J. pp. 1316-1317; 57 C.J.S. Master and Servant § 3(3); Cf. Mosley v. George A. Fuller Co., 5 Cir., 250 F.2d 686.
 
 
 23
 The majority opinion, denying its proper weight to the provision of the main contract that the contractor agreed to perform the work and that he would not sublet it without consent, seems to proceed entirely upon the theory that because in the agreement between Cordova and Bowyer it was stated that the contractor was subcontracting a part of the work, this alone would make Cordova an independent contractor without regard to the terms and conditions of the contract, though when the contract is looked to it would be found completely wanting in provisions which would make Cordova an independent contractor.
 
 
 24
 Among other things, after stating that Bowyer will collect the money from the state for the work, it continued: "We will deduct from this payment ten percent as our portion and participation in this work." It further provides: "All provisions and requirements of our original contract * * * shall in effect exist between us, and this work is to be done according to plans and specifications." Nowhere in it does Bowyer surrender the direction and control of the work. The entire reliance therefore of Bowyer must be and is based not on the provisions of the contract but upon the conclusions and opinions of Tom Johnson, the treasurer of Bowyer, that the company did not have the right to direct the work. The record standing thus, the opinion of the majority in holding contrary to the conclusion of the district judge that there was no independent contract, in my opinion may not stand.
 
 
 25
 If, however, I am wrong in this and Cordova should be regarded as an independent contractor as a matter of law, in addition and more important there is and can be, under settled law in Mississippi and generally elsewhere, no escape from the conclusion that it would, nevertheless, be liable here. This is because the subject matter of the contract between the state and Bowyer and between Bowyer and Cordova, the clearing off of the public right of way, with the inevitable setting of fires up and down it so that injuries may be caused to the public unless precautions are taken, involved a non-delegable duty of the contractor to the public or to an individual as relates to the use of fires to burn brush, etc. cleared in constructing a public highway. Pickett v. Waldorf System, 241 Mass. 569, 136 N.E. 64, 23 A.L.R. 1014 and following note Precautions 1016 to 1081. The rule gathered from exhaustive annotations in 23 A.L.R. 1016 et seq., the many cases citing it, including 24 A.L.R.2d 224, was thus stated in 24 A.L.R.2d at page 288:
 
 
 26
 "Liability was imposed on the theory of the non-delegable duty of the employer with regard to the setting of a fire which would in the natural course of events produce injury unless certain precautions were taken."[1]
 
 
 27
 Whether or not the misapprehension that this general rule of non-delegibility was limited to the more specific rule governing inherently dangerous instrumentalities, is not made clear, though apparently this is their view. The majority, however, does not give to the more important, the more comprehensive rule controlling here even the lip service of a mention.
 
 
 28
 This is the testimony which compels the application of the rule here: A witness for plaintiffs testified (T.R. p. 51) that the Cordova Company made a fire every day and they set it out every day "to burn the brush up that we cut off the right-of-way." In answer to a question (T.R. p. 52) "Charley, what precaution did Mr. Wortham and the employees for the Cordova Sand & Gravel Company take on this particular morning to keep the fire from spreading?", he answered, "They didn't take none." While on pages 65-66 he testified that they didn't even put out the fires at night. Another witness testified (T.R. 120-121) that he would see the fires up and down the road where they would be burning brush, "just brush fires from one end to the other where they were cleaning off the right-of-way." No contrary evidence to this was offered by either defendant.
 
 
 
 Notes:
 
 
 [1]
 Mississippi cases of the many that may be cited to the same effect are: Crisler v. Ott, 72 Miss. 166, 16 So. 410; Yazoo & M. V. R. Co. v. Gordon, 184 Miss. 855, 186 So. 631; Transcontinental Gas Pipeline Corp. v. Myrick, 51 So.2d 475; Weldon v. Lehmann, 226 Miss. 600, 84 So.2d 796