JETT DRILLING COMPANY, INC. *v.* JONES AND SHOWS

No. 43238          December 7, 1964          169 So. 2d 463

*Watkins & Eager, Elizabeth Hulen,* Jackson, for appellant.

*George B. Grubbs, George G. Williamson,* Mendenhall, for appellees.

LEE, C. J.

F. S. Jones owned the surface rights of NW¼ of NE¼ and NE¼ of NW¼, Section 27, Township 2, Range 5 East in Simpson County, Mississippi. A. L. Shows owned SW¼ of NE¼ of said section, township and range, immediately south of Jones' first described forty, with a branch as the recognized line between them. Jones was a son-in-law of Shows. These two parties filed separate suits against Jett Drilling Company, Inc., a Texas corporation, to recover damages, both actual and punitive, to their lands as a result of the alleged negligence of the defendant in and about drilling operations to recover oil and gas on the lands of L. R. Shows, on the SE¼ of NE¼ of the above described section, immediately to the east of A. L. Shows' land.

The defendant, in its answer to the declaration of Jones, denied the material allegations thereof. It set up that it was drilling the well for the owner of the

leases, had completed its work, and was not responsible for any damage that might have accrued subsequent to the completion of its work. Besides, it alleged that Jones, for a valuable consideration, had fully released it from all damages whatever that he had sustained from the defendant's negligence, if any. Besides, it averred that its acts were the natural result of a prudent operation.

In its answer to the declaration of Shows, the defendant also denied all material allegations, and set up the same averments as had been made in the Jones answer, except that it did not claim a release.

The cases were, by agreement, consolidated and tried together with separate instructions, separate verdicts for plaintiffs, and separate judgments.

The evidence for Jones was to the effect that after the defendant began drilling this well, he noticed that the drainage, wash, etc., from the rig was coming down the branch, on his land. This was occasioned because the well was being drilled in the northwest corner of that property, about 300 feet from the common corner of the lands of L. R. Shows, A. L. Shows and himself; that there were two ever-producing springs at the head of the branch a short distance from the common corner above mentioned, on the recognized line between him and his father-in-law; that the springs were being polluted from these washes; that he and Farley Shows, his brother-in-law, went to the drilling site and informed the manager of Jett about what was happening, and that the manager said that he would do his best to ''kill it off''. However, several days later Jones went back and found that the flow was still coming. About the time that Jett was finishing the drilling, the dam around the pit broke, and all of the slush, filth and mud from the pit spilled out and ran down the drain over his eighty acres and the forty acres of A. L. Shows, doing much damage. While the evidence was that Jett was

still drilling when this dam broke, both he and Farley Shows admitted that only a part of its rig was on the drill site at the time. The evidence was to the effect that the two springs have not afforded any water within the last three years, damaging the value of the lands, which were used for cattle grazing. There was evidence of blue mud and chemicals from the slush pit for one-half of a mile. The timber on both sides of this strip, which averages about 60 feet wide, was all practically destroyed.

The evidence of Farley Shows was to the same effect and covered damages to both the A. L. Shows and F. S. Jones lands and gave more details concerning the alleged damages. It was conceded that most of the damage was caused by the breaking of the dam.

Three witnesses, Roy Upton, in charge of Jett's drilling operations, Roy Boggs, superintendent thereof, and G. W. Edison, an employee of Central Oil Company, testified to the effect that the well was being drilled for Southern States Oil Company to a depth of about 13,000 feet; that Jett began its operation on June 1, 1960; that it finished its part of the operation and was released on July 9, 1960; that the rig was moved from the drill site on July 12, 1960; that another drilling machine, operated by another company, was moved upon the site to complete the work; that several weeks later, there was a big rain, and the dam of the pit broke; and that Jett had long since taken its departure.

Practically all elements of damages were in dispute. ▬ ▬ Jett Drilling Company, Inc., was the only defendant. The alleged owner, for whom the well was being drilled, was not made a defendant. Neither was the other contractor, who allegedly completed the well, joined as such. While the evidence for the appellees tended to show that Jett did some damage, the evidence further showed that the greater part of the damage grew out of the breaking of the dam around the slush

pit. Besides, the evidence was also conclusive that Jett Drilling Company had already left the site when the dam broke. In other words, there is no basis upon which this Court can say that the amounts of these verdicts for the appellees can be sustained. Besides, the damage, caused by Jett, is not pointed out clearly enough to justify the Court in a conditional affirmance, provided that remittiturs should be accepted. The case must, therefore, be reversed and remanded for a new trial.

It is necessary to call attention to two matters, as they are apt to recur in another trial:

(a) Punitive damages. There was evidence from two witnesses of the plaintiff that they went to the manager of Jett and told him about the flow immediately after the drilling had begun; and that he promised to stop this flow, but several days later, when they again inspected the drain, the drainage was continuing. The manager admitted that he received this complaint; that he made a change in operation which he thought would redress this grievance; and that he thought this had been accomplished. Under these circumstances, the Court is of the opinion that The Greyhound Corp. v. Townsend, 234 Miss. 839, 108 So. 2d 208 (1959), and Laurel Equipment Co. v. Matthews, 218 Miss. 718, 67 So. 2d 258 (1953), and the authorities there cited, preclude the award of punitive damages under the facts shown in this record. Since the owner of the well was not a defendant, the principles applicable in Fair Lumber Co. v. Weems, 196 Miss. 201, 16 So. 2d 770 (1944) are not invocable.

(b) The defendant offered in evidence a release, which it and others, for value, obtained from Jones on account of damage which the offending parties caused to him by the drilling of another well on the lands of A. L. Shows, on the forty acres adjacent to the Jones land on the east. But this alleged damage was caused in 1959, long before the occurrence of the circumstances

in his present suit. That release recited that it was in settlement of damages for an incident which occurred on December 12, 1959. It did not, therefore, bar any damage from the drilling of the L. R. Shows well. L & A Contracting Co. v. Hube, 241 Miss. 710, 133 So. 2d 394 (1961), and authorities there cited. *Cf.* Yazoo & M. R. Co. v. Smith, 43 So. 611 (1907). However, Jones cannot again, in the present suit, recover for any damage which he has released by that instrument.

It follows, therefore, that this cause must be reversed and remanded for a new trial.

Reversed and remanded.

*Ethridge, Gillespie, McElroy and Brady, JJ.,* concur.