367 So.2d 929 (1979)
The COLLEGE LIFE INSURANCE COMPANY OF AMERICA
v.
T.J. BYRD.
No. 50881.
Supreme Court of Mississippi.
February 21, 1979.
Watkins, Pyle, Ludlam, Winter & Stennis, William A. Pyle, Richard F. Scruggs, Jackson, for appellant.
Caldwell, Lee, Richardson & Medley, Michael R. Medley, Jackson, for appellee.
Before PATTERSON, BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant, The College Life Insurance Company of America, appeals from a judgment against it by appellee in the Circuit Court of the First Judicial District of Hinds County.
Appellee's declaration alleged that on or about December 15, 1976, he entered into an employment contract with appellant Insurance Company through its local general agent, Wilford Welch. It was alleged that Welch had full authority to employ appellee as an insurance sales representative for the Company and that the agreement between appellee and Welch was that appellee was to receive $800 per month and sales commissions. The declaration further alleged that he commenced work but was not paid according to the agreement, and charges that appellant failed to make the payments due to its wilful, wanton, malicious and intentional actions and that such actions constituted fraudulent conduct.
*930 The case was presented to the jury on the question of whether or not Welch had authority to employ appellee. In the event this would be in the affirmative, the jury was permitted under instructions of the court to find both actual and punitive damages. The verdict was for appellee against appellant in the sum of $1200 as actual damages and $10,000 as punitive damages. By agreement, the actual damage award was reduced to $1100, representing the amount of salary contended by appellee to be owed.
Numerous assignments of error are propounded by appellant, however, in disposing of the appeal it is only necessary to consider two questions, namely: (1) Whether or not Welch had authority to employ appellee, and, if so, the conditions of employment; and (2) whether or not the actions of appellant as reflected in the record were sufficient to authorize an award of punitive damages.
Appellant contends that Welch only had authority to negotiate with appellee and that any final and binding decision would be made in the home office of the company in Indiana. It will serve no useful purpose to relate the voluminous testimony regarding appellee's contact and negotiations with Welch. The testimony of appellee was positive that Welch represented to him that he had full authority to bind the company in the employment negotiations and the agreement to begin work on December 15, 1976, at $800 per month was a binding agreement at that time. Testimony was elicited from Welch that he had authority to enter into the agreement with appellee. Other supervisory personnel testified as to Welch's authority to secure sales representatives. However, the record shows that appellee executed a "Special Agent's Contract" form in blank, with the understanding that it would be forwarded to the company for its acceptance and execution. This was never done. Appellee stated that Welch's explanation for the written instrument was that it was for the purpose of facilitating payment of appellee's compensation.
The contract between Welch and appellant was introduced in evidence, which contract attempted to make Welch an independent contractor without authority to bind the company.
It was said by this Court in the case of General Contract Corporation v. Leggett, 224 Miss. 262, 79 So.2d 843 (1955):
Where the relationship of principal and agent exists, if the principal places his agent in a position where he appears, with reasonable certainty, to be acting for the principal, and his acts are within the apparent scope of his authority, obviously such acts bind the principal. Allen v. T.J. Moss Tie Co., 157 Miss. 392, 128 So. 351, and authorities too numerous to mention.
It clearly was a question for the jury as to whether or not Welch had authority from appellant to employ appellee.
The difficult question arises in considering whether or not there was sufficient evidence under the authorities to authorize a finding of punitive damages by the jury. There are several items of evidence as shown by the record necessary to consider. It was admitted by appellee that the contract he signed in blank would have to be forwarded to the home office of the company for final execution, although ostensibly for the purpose of making a payment record.
It was undisputed that before appellee had authority under the law to solicit and accept applications for insurance on behalf of appellant, it was necessary for him to secure a certificate of authority from the Insurance Commissioner of the State of Mississippi. The record shows that payment for this permit was not received in the office of the Insurance Commissioner until January 17, 1977, although the certificate was issued as of January 1, 1977. The certificate of authority was not forwarded to appellee until February 1, 1977. During the later part of December or the first part of January, appellee forwarded two applications to the company, together with checks for the first premium. It later developed *931 that both of these checks were returned because of insufficient funds in the accounts on which the checks were written. On January 18, 1977, one day after payment of appellee's certificate of authority fee, a representative from the company's home office came to Jackson and had a meeting with appellee and other company personnel. He advised them at that time that the Welch Agency was being discontinued as of that date. He advised them that he would try to get them a position with another agency. He made this effort but failed to do so due to the fact that the agency was filled.
Although appellee urges the contention that at the time he was hired by Welch the company knew that the Welch Agency would be discontinued, there is no proof of this in the record. In addition to the alleged authority of Welch, the principal evidence regarding any arbitrary nonpayment of salary on the part of the company was the testimony that telephone calls were made to the company during which payment was requested and promised. This is somewhat offset by the evidence that the fee authorizing appellee to sell insurance on behalf of the company was not received by the Insurance Commissioner until January 17, 1977. The certificate of authority was not mailed to the company and appellee until February 1, 1977, whereas the home office representative had closed the Welch Agency as of January 18.
This Court is clearly on record that punitive damages are authorized in a suit for breach of contract under certain conditions and elements of proof. We have said that:
Exemplary or punitive damages are those, of course, which are in addition to the actual or compensatory settlement. They are granted in the nature of punishment for the wrongdoing of the defendant and as an example so that others may be deterred from the commission of similar offenses thereby in theory protecting the public. Yazoo & Mississippi Valley R.R. Co. v. May, 104 Miss. 422, 61 So. 449 (1913); Yazoo & Mississippi Valley R.R. Co. v. Hardie, 100 Miss. 132, 55 So. 42 (1911); See also U.S. Fidelity & Guaranty Co. v. State, 254 Miss. 812, 182 So.2d 919 (1966); Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962); West Bros., Inc. v. Barefield, 239 Miss. 530, 124 So.2d 474 (1960); as well as the discussion in 15 Am.Jur., Damages, § 265, p. 698 (1938).
The basis in awarding such damages to the injured party is that of rewarding an individual for public service in bringing the wrongdoer to account. Fowler Butane Gas Co. v. Varner, supra; Neal v. Newburger Co., 154 Miss. 691, 123 So. 861 (1929); and Hines v. Imperial Naval Stores Co., 101 Miss. 802, 58 So. 650 (1911). ([Snowden v. Osborne (Miss.)] 269 So.2d [858] at 860).
We authorized an award of punitive damages in a breach of contract case in Standard Life Insurance Company of Indiana v. Veal, 354 So.2d 239 (Miss. 1978), on the ground that the obvious breach was an "intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort. D.L. Fair Lumber Company v. Weems, 196 Miss. 201, 16 So.2d 770 (1944); American Ry. Express Co. v. Bailey, 142 Miss. 622, 107 So. 761 (1926); Hood v. Moffett, 109 Miss. 757, 69 So. 664 (1915). ([Progressive Casualty Insurance Company v. Keys (Miss.)] 317 So.2d [396] at 398)."
We adhere to the rule that a party to a broken contract may have imposed on him a judgment for punitive damages where the evidence establishes a jury question on the above set out principles.
The declaration charged that the appellant engaged in "fraudulent conduct" toward appellee. The instructions were based on the jury finding appellant guilty of fraud by clear and convincing evidence. In cases [too numerous to cite] we have set out the elements of fraud and reaffirmed that it should be proven by clear and convincing evidence.
After carefully studying the record in the present case, and analyzing the entire evidence as well as that specifically discussed, *932 we are of the opinion that appellee did not prove that the appellant insurance company through its authorized agent was guilty of fraud by clear and convincing evidence. As hereinbefore stated, it was a question for the jury as to whether or not the salary for one and one-half months was due appellee. We do not think there was sufficient evidence to find that the failure to pay this salary was the result of fraud or intentional, wilful misconduct on the part of appellant.
We therefore affirm the case as to the award of actual damages and reverse and render as to the award of punitive damages, and enter a judgment here for appellee against appellant in the sum of $1100.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.