488 So.2d 793 (1986)
BAXTER PORTER & SONS WELL SERVICING CO., INC.
v.
VENTURE OIL CORPORATION and Wilbur R. Lilly.
No. 55536.
Supreme Court of Mississippi.
May 14, 1986.
*794 K. Hayes Callicutt, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, Robert H. McFarland, William R. Ruffin, Bay Springs, for appellant.
Al D. Eatmon, Jackson, for appellees.
Before ROY NOBLE LEE, P.J., and HAWKINS and SULLIVAN, JJ.
HAWKINS, Justice, for the Court:
Baxter Porter & Sons Well Servicing Co., Inc. (Porter), a Bay Springs corporation engaged in drilling and servicing oil wells, appeals from a JNOV of the circuit court of the Second Judicial District of Jasper County in favor of Venture Oil Corporation (Venture) and Wilbur R. Lilly (Lilly).
Persuaded there was a jury question presented on whether Lilly in his dealings with Porter had apparent authority to bind Venture, we reverse and render, reinstating the original judgment based upon the jury verdict.

FACTS
Venture and the James W. Harris Production Corporations (Harris Corporation) were Mississippi corporations with principal offices in Jackson. They shared the same office suite. James W. Harris was president of both corporations, Lilly the vice president of both. Both men were on the boards of directors of both corporations. Although the stock ownership is not revealed there was testimony that these two corporations were owned by these two men and their families. Lilly is a petroleum engineer engaged in oil exploration.
In November, 1981, Lilly in a verbal contract made with Rayford W. Porter, vice president and acting for Porter Corporation, engaged the services of Porter to clean out and redrill the A.C. Saxon Well No. 1, an old oil well in Jasper County.
The only dispute in this case is whether Lilly was only acting for Harris Corporation, about which there is no dispute, or for both Venture and Harris corporations, and also whether Lilly had actual or apparent authority to bind both corporations.
Lilly denied that he ever represented Venture, but Porter and Mrs. Nancy Porter, office manager of Porter, testified Lilly specifically directed each of them to submit all invoices to Venture. Mr. Porter testified also that prior to the work beginning Lilly told him that he did not know which corporation would be billed, it might or might not involve Venture, but that later *795 Lilly told him to bill Venture. Lilly denied giving any such instructions.
Two types of records were made, daily drilling reports and invoices. Lilly had an office trailer on the well site, where he managed the activities for himself and the business organization he represented.
There were a total of 126 daily drilling reports. The first nine, covering a period of December 30, 1981, to January 7, 1982, showed the work was being performed for the Harris Corporation. The remainder covering a period from January 8, 1982, to June 4, 1982, show the work being performed for Venture.
There were a total of 77 invoices submitted by Porter. The first eight, totaling $7,869.15, and covering a period from January 11, 1982, to March 4, 1982, were submitted to the Harris Corporation. There were two additional invoices dated April 22 and April 26, 1982, for the total sum of $1,354.50 submitted to the Harris Corporation. The remaining 67 invoices were submitted to Venture. They covered the period March 15, 1982, to June 4, 1982. The sum total of all invoices was $621,836.08, of which $612,792.43 were billed to Venture. Porter was paid $70,000.00, leaving a balance due of $551,836.08.
There was also evidence at trial that the Paul Rowell Construction Company performed bulldozer work at the site. This company likewise submitted 34 invoices or tickets to Venture. All were signed "Wilbur L. Lilly."
On April 29, 1982, Lilly delivered a two-page handwritten letter of the same date to Porter, complaining of the poor work performed by the latter, and stating that Porter's action had created irreparable damage.
On the second page, next to the last paragraph, Lilly wrote:
This is to further advise you that Venture Oil Corporation has no title, interest or supervision of this well.
The permit for the well was obtained in the name of the Harris Corporation.
When the account was not paid, Porter initially sued and obtained a judgment against the Harris Corporation. The judgment was not paid and this suit was instituted against Venture and also Harris and Lilly individually.
At the conclusion of the plaintiff's case the circuit judge directed a verdict in favor of Harris individually. The case proceeded against Lilly and Venture, resulting in a jury verdict in favor of Porter. The circuit judge entered a final judgment on that verdict in the sum of $554,640.00. Thereafter, on motion of the defendants, he set it aside in the following order:
ORDER
THIS DAY came on for hearing the Motion of Venture Oil Corporation and Wilbur R. Lilly to set aside the jury verdict and the judgment entered thereon on the 7th day of March, 1983, notwithstanding the jury verdict in the above styled and numbered cause, and the court having heard argument of fact and law by counsel for all parties, and having found that Plaintiff's claim is barred by MCA § 15-3-1 (1972) and that Defendant Wilbur R. Lilly had no authority to bind Venture Oil Corporation, it is of the opinion that the Motion should be granted.
IT IS, THEREFORE, ORDERED AND ADJUDGED that the Complaint and any and all amendments to same are dismissed with prejudice with costs assessed to Plaintiff and that Plaintiff recovers nothing.
IT IS FURTHER ORDERED AND ADJUDGED that the Judgment entered herein on the 7th day of March, 1983, is hereby set aside, held for naught, and the Clerk is hereby ordered to make the judgment cancelled.
SO ORDERED AND ADJUDGED THIS THE 12th day of August, 1983.

LAW
Porter does not assign any error for the dismissal of the suit against Harris individually. Its sole claim of error is that the *796 judgment against Venture and Lilly should not have been vacated.
There was credible evidence from which the jury could find that Lilly purported to act on behalf of and to bind Venture. Mr. and Mrs. Porter so testified, nearly all the daily drilling reports and invoices were made to Venture. Some were signed by Lilly. All Rowell Construction invoices or tickets were to Venture, and all were signed by Lilly. Lilly's claim that he signed the invoices without noticing they were to Venture, rather than to the Harris Corporation, possibly has some bearing on whether Venture gave him express authority to represent it, but no relevance on what Porter was reasonably led to believe.
The sole question, then, is whether Lilly had express or apparent authority to bind Venture.
If Lilly had apparent authority to bind Venture, there is no need to inquire whether he had express authority. See: McPherson v. McLendon, 221 So.2d 75 (Miss. 1969); and Steen v. Andrews, 223 Miss. 694, 78 So.2d 881 (Miss. 1955).
As a shareholder, vice president and director of Venture and the Harris Corporation, we cannot comprehend why Lilly, himself an experienced petroleum engineer, was not clothed with apparent authority at the very least to represent either or both of these close corporations in the business in which they were engaged.
O'Neal, in Close Corporations, 2nd Ed. Vol. II, § 8.05 states, p. 23, that courts generally recognize that officers of a close corporation possess "the same powers that are possessed by partners in a firm under the general rule of partnership law which makes each partner an agent of the firm for the purposes of its business and empowers each partner to bind the firm by acts apparently carried on to further the usual business of the partnership." The author then concludes, p. 24:
In general, the results reached by the courts in cases involving close corporations seem to be sound. Any officer in a close corporation, irrespective of the particular office he holds, should have power to bind the corporation by acts apparently carried on to further the usual business of the corporation, and not otherwise. There appears to be no sound reason for drawing a distinction between the powers of the various officers in a close corporation. After all, the officers in a close corporation are almost invariably substantial shareholders; the decision-making pattern in a close corporation is analogous to that of a partnership rather than that of a publicly held corporation; and each shareholder-officer actively participates in management. Nevertheless, it does seem that the courts should clearly enunciate the standards that they actually follow in fixing the power of officers in close corporations so that the amount of litigation in that area can be decreased.
We adhere to this view, and hold that an executive officer of a close corporation such as Lilly, in carrying on the usual business of the corporation has the same apparent authority as a partner in a partnership as against third parties who in good faith rely upon his representation.
In Clow Corporation v. Mullican, 356 So.2d 579 (Miss. 1978), we set forth guidelines for determining apparent authority of an agent, and held, p. 583, this question was a factual issue to be determined by the jury. See also: College Life Ins. Co. of America v. Byrd, 367 So.2d 929, 930 (Miss. 1979).
Moreover, in this case, this Court can have little sympathy for the position these defendants take. Harris Corporation and Venture occupied the same suite of offices, had the same man as president, the same man as vice president of each, and an interlocking directorate. To attempt, in a situation as this, after substantial services have been performed, to channel all liability to one corporation and completely relieve the other poses too many opportunities for chicanery to expect relief from us. If corporations thus situated wish to avoid the predicament in which Venture now claims to find itself, they have an obligation to unequivocally *797 notify third parties precisely which corporation with whom they are dealing. The judgment setting aside and vacating the original verdict and original final judgment is itself vacated and set aside, and this case is reversed and rendered, and the original final judgment against Lilly and Venture reinstated.
REVERSED AND RENDERED, ORIGINAL FINAL JUDGMENT REINSTATED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
DAN M. LEE, J., not participating.