## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CT-01727-SCT

*WILLIE ALEXANDER AND CARLA VEAL ALEXANDER*

*v.*

*LYNELL BROWN AND PAMELA BROWN*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/22/1998 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | WES W. PETERS |
| ATTORNEY FOR APPELLEES: | DAVEY L. TUCKER |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED - 08/30/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/20/2001 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Willie and Carla Veal Alexander appealed the Madison County Chancery Court's dismissal of their trespass action against Lynell and Pamela Brown. Willie Alexander also appealed his conviction of contempt which was based upon his actions on July 19, 1998, that were in violation of an agreed protective order. The appeal was assigned to the Court of Appeals which affirmed the contempt conviction and reversed and remanded the dismissal of the trespass action. The Browns petitioned for writ of certiorari seeking reversal of the Court of Appeals' decision regarding dismissal of the trespass action and seeking to reinstate the chancery court decision. We granted certiorari. After finding that the Court of Appeals erred in applying an erroneous standard of review and in reversing the dismissal of the trespass action, we now reverse the Court of Appeals' decision as it affects the trespass action and reinstate the chancery court's dismissal of the trespass action.

### FACTS

¶2. Lynell and Pamela Brown ("the Browns") purchased Lot 6 in Ingleside East Subdivision in Madison County. Willie and Carla Alexander ("the Alexanders") owned Lots 9 and 5. The Alexanders live on Lot 9. Lot 5 is a vacant lot adjacent to Lot 6, and is the subject of the trespass action. Prior to construction, Mr. Alexander showed Mr. Brown what he considered the boundary between Lots 5 and 6 and suggested that the Browns obtain a survey. Mr. Alexander also told Mr. Brown that he did not want anyone on his property.

¶3. The Browns contracted for bulldozer work to prepare their lot for construction. On a Thursday, Mrs.

Alexander and her neighbor, Kelly Kersh, owner and resident of Lot 7, witnessed a bulldozer cross onto Lot 5 as it was preparing Lot 6. Mrs. Alexander, accompanied by Mrs. Kersh, approached Buddy McGowan ("McGowan"), the bulldozer operator, and asked him to stay off Lot 5. The following day, Mrs. Kersh again witnessed the bulldozer at work on Lot 5, the Alexanders' property. She informed Mrs. Alexander who called Mr. Alexander at his job and informed him that the bulldozer operator was again damaging Lot 5. Mr. Alexander left work and came to deal with the problem. Mr. Alexander confronted McGowan about the trespass and ascertained that he was working for the Browns. According to Mr. Alexander, the bulldozer had removed dirt, grass and young trees from a strip of Lot 5, measuring 20' wide by 150' long.

¶4. The Alexanders requested the Browns to compensate them for the alleged damage to Lot 5. The Browns refused and sought a declaratory judgment that no trespass had occurred on Lot 5. The Alexanders responded by filing an action for damages against the Browns caused by the alleged trespass. The two cases were consolidated for disposition.

¶5. The Alexanders were called upon by Chancellor Lutz to present their case-in-chief first. After the Alexanders rested, the Browns moved for dismissal based upon the failure of the Alexanders to make a prima facie case on the issue of liability for trespass. After deliberation, Chancellor Lutz granted the Browns' motion and dismissed the case. The Alexanders filed a motion for reconsideration which was heard a few weeks later. Chancellor Lutz denied the motion and made more specific findings. At the hearing, Chancellor Lutz stated that although he believed that McGowan had moved some dirt from Lot 5, the Alexanders did not prove the elements of trespass and did not prove damages with regard to the Browns. Chancellor Lutz stated "I have nothing in there that ties the removal of that dirt to these people [the Browns]." The Alexanders did not call McGowan to testify.

## ANALYSIS

### A.

### STANDARD OF REVIEW

¶6. This Court has held that the standard of review applicable on a motion to dismiss under Miss. R. Civ. P. 41(b) is different than that applicable on a motion for directed verdict. *Stewart v. Merchants Nat'l Bank*, 700 So. 2d 255, 258 (Miss. 1997).

> In considering a motion to dismiss, the judge should consider "the evidence fairly, as distinguished from in the light most favorable to the Plaintiff," and the judge should dismiss the case if it would find for the defendant. "The court must deny a motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." "This Court applies the substantial evidence/manifest error standards to an appeal of a grant or denial of a motion to dismiss pursuant to M.R.C.P. 41 (b)."

*Id.* at 259 (interior citations omitted).

### B.

¶7. The Browns contend that the Court of Appeals applied an incorrect standard in reviewing the trial court's decision. The Browns assert that the Court of Appeals applied the standard of review applicable to

a directed verdict in a jury case, rather than the standard of review applicable to a case before a trial judge sitting as the trier of fact.

¶8. The record reveals that at the close of the Alexanders' case-in-chief the Browns moved to dismiss the case based upon the Alexanders' failure to prove by a preponderance of the evidence that the Browns committed any trespass either directly or indirectly through McGowan. The chancellor on the record stated "I have come to the inescapable conclusion that the Alexanders failed to make a prima facie case, and I am therefore granting the Motion to Dismiss with Prejudice."

¶9. It is clear from its recitation of the facts that the Court of Appeals realized that the trial judge had granted a motion to dismiss rather than a directed verdict. However, the Court of Appeals erroneously applied the standard of review of abuse of discretion, which is applicable to directed verdict. In utilizing this erroneous standard, the Court of Appeals stated that "[b]ecause there was no proof, nor any attempt at proof, of an independent contractor relationship, this Court finds that the chancellor abused his discretion."

¶10. Clearly, the Court of Appeals' application of an erroneous standard of review in its analysis rendered its decision in conflict with prior cases of this Court providing the applicable standard of review for motions to dismiss under Rule 41(b).

## C.

¶11. We now turn to the issue of whether, utilizing the proper standard of review, the motion to dismiss was properly granted. In deciding to reverse the chancellor's decision, the Court of Appeals majority states:

> There are two basic flaws in the chancellor's decision. They are his findings (1) there was nothing to connect Mr. McGowan to the damage done on Friday, and (2) Mr. McGowan was an independent contractor.
>
> Kelly Kersh testified to seeing the bulldozer digging on the Alexanders' property on that Friday. This testimony is found in the trial transcript at page 30.
>
> Mr. Alexander testified to confronting Mr. McGowan on his property on Friday.
>
> His testimony is found in the record on pages 92-94. The testimony of these two witnesses is sufficient to connect Mr. McGowan to the Friday damage.
>
> The chancellor found that Mr. McGowan was an independent contractor and that therefore the Browns were not responsible for his actions. An employer is not generally liable for the torts of an independent contractor. *Hester v. Bandy*, 627 So. 2d 833,841 (Miss. 1993). However, the trial court cannot assume that an independent contractor relationship exists. There must be some proof of that relationship. The record is absolutely devoid of any evidence to establish that Mr. McGowan was an independent contractor. In the absence of such evidence, the chancellor committed reversible error in holding that McGowan was an independent contractor for whom the Browns had no responsibility.

¶12. The Court of Appeals was correct in noting that there was testimony linking McGowan to the damage done on Friday. However, the issue was not whether McGowan had committed trespass, but instead whether the Browns had committed trespass, either directly or indirectly through McGowan. As noted by Chancellor Lutz, and the Court of Appeals' dissent, the Alexanders failed to prove that McGowan was an

"employee" of the Browns. This was an element on which proof was necessary in order for the Alexanders to make a prima facie case of trespass. McGowan was not called to testify though he would have in all likelihood provided the link necessary to hold the Browns liable for trespass. The failure to establish employment was fatal to the Alexanders' case.

¶13. The Court of Appeals majority, however, turns the chancellor's view around, and holds that absent proof that McGowan was not the Browns' employee, the case should have been permitted to proceed. We disagree. McGowan's status as an independent contractor was not an affirmative defense. To the contrary, the burden of proving that McGowan was an agent or employee of the Browns' was on the Alexanders'. When the Alexanders rested their case, McGowan's status should have already been proven. If McGowan's status as an employee or independent contractor was an affirmative defense, the Browns would have accepted as true all the assertions of the complaint, and then would have raised McGowan's status as a basis for avoidance of liability. *Hertz Commercial Leasing Div. v. Morrison*, 567 So.2d 832, 834-35 (Miss.1990). However, in order to make out a prima facie case against the Browns for trespass, the Alexanders needed to prove that the Browns were liable for McGowan's actions because he was their employee. This they failed to do. The Browns' position that McGowan was an independent contractor was not an acceptance of the Alexanders' assertions. It was a denial.

¶14. While others testified, only two witnesses' testimony bears substantially on the present issue: Kelly Kersh and Willie Alexander. Kelly Kersh, owner and resident of Lot 7, testified that she could observe both the Alexander and the Brown lots from her kitchen window. In a fashion reminiscent of Gladys Kravitz on the television series Bewitched, Mrs. Kersh watched the activity on the Brown and Alexander lots with keen interest. In keeping with her Gladys Kravitz persona, Mrs. Kersh promptly reported her observations to anyone who would listen. She phoned Entergy and complained that the Browns were about to hook up to her electrical power box without her consent. She phoned the water treatment plant to find out where the ground water on the property was going to drain. She also phoned the building inspector because she was concerned about the slab being poured on the Brown lot, believing it to be too thin. She also kept the Alexanders updated regarding the activities occurring on the Brown property. All in all, she recalled having at least ten conversations with the Alexanders regarding the activities on the Brown property.

¶15. Willie Alexander also complained that workers on the Brown property crossed his vacant lot to get to an adjoining neighbor's outdoor bathroom and that they used his property to park their vehicles. He admitted, however, that none of the workers told him that the Browns directed them to use his property in such a manner. In fact, Mr. Brown had a notice stating that no contractor was to go onto Lot 5 posted on the job site. Clearly, these acts were taken despite the Browns' directions otherwise. These acts constitute lone adventures, not joint ventures.

¶16. Mr. Alexander further admitted that he hired McGowan to do work on his own lot. He testified that he spotted McGowan bulldozing on his property. Mr. Alexander stopped McGowan and told him to "get off his property and stay off." McGowan explained that he had seen a snake in the brush nearby and was trying to clear it out. Mr. Alexander, apparently no Crocodile Dundee, and fearing snakes, said "by all means, clear that out, but keep your bulldozer off my property." Four days later, he hired McGowan to do additional work on his own driveway. Perhaps this proof explains the Alexanders' recalcitrance to call Mr. McGowan to testify.

¶17. Mr. Alexander also testified that he spoke with Sammy Winder, a dirt contractor, on the Brown

property. He had previously contracted with Winder to deliver a dump truck load of dirt. He himself went onto the Brown property to pay Winder.

¶18. A review of the testimony reveals that there was a good bit of invading of neighboring lots done by the lone adventurers in their mixed roles. Add this to the side dealings and it is difficult to know what exactly the lone adventurers were doing at any given time. Also, it is impossible to tell at whose direction, if anyone's at all, they were acting.

¶19. The case presented by the Alexanders was that the Browns committed a trespass solely through McGowan, who was not a defendant in the case, and who was not called to testify. The Court of Appeals cites authority that a person can be liable for trespass by causing someone else to commit the tortious act. W. Page Keeton, *Prosser & Keeton on the Law of Torts* §13, at 73 (5th ed. 1984). We do not disagree with the law. The point, however, is that no evidence was presented that the Browns caused McGowan to commit the trespass. The case fails on the facts. The only evidence linking the Browns to McGowan was that the Browns retained McGowan's services. This fact alone does not render them liable for his torts. If it did, then the Alexanders have an additional problem, since they retained his services too. As Dean Keeton further states in section 13, the intent necessary for a trespass is for one "to be at the place on the land where the trespass allegedly occurred." *Id.* It was the absence of any proof that the Browns had this intent that the chancellor relied upon to reject liability.

¶20. One who retains the services of an independent contractor is not generally liable for the torts that he commits:

> It is well settled that one who contracts with an independent contractor to perform certain work or service which is not illegal, dangerous or harmful, is not liable for torts committed by him. Where, however, the work or service to be performed in itself entails the commission of some illegal, dangerous or tortious act, the rule obviously cannot apply, because in such instance the principal and the independent contractor both play an integral part, are both proximate causes, of whatever harm ensues.

*Hester v. Bandy,* 627 So.2d 833, 841 (Miss. 1993) (citation omitted). This general rule is applicable to the instant case, as there was nothing illegal, dangerous, or harmful about having this lot cleared so the Browns could build their home.

¶21. Relying on *Long v. Magnolia Hotel Co.*, 227 Miss. 625, 86 So. 2d 493 (1956), the Alexanders, as well as the dissent in this case, assert that the Court of Appeals properly reversed and remanded the case. In *Long*, after the close of all of the evidence, the trial court granted a peremptory instruction and entered judgment for the defendants, the adjoining landowner and contractor. The basis for the peremptory instruction was that at least some of the damage was caused by a tornado. This Court reversed the trial court and found that the question of negligence of the contractor and the adjoining landowner should have been presented to the jury.

¶22. The facts of the instant case are clearly not analogous to *Long*, and the law used to decide *Long* does not control in this case. Based upon a fair reading of the record presented before the chancellor, we find that the evidence supports the chancellor's finding that the Alexanders failed to make a prima facie case of trespass against the Browns. Consequently, we also find that the motion to dismiss was properly granted.

<u>CONCLUSION</u>

¶23. For these reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the chancellor as it relates to the trespass action.

¶24. **JUDGMENT OF THE COURT OF APPEALS IS REVERSED.**

**BANKS, P.J., SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J., AND EASLEY, J. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶25. The majority errs when it states that the Alexanders failed to prove McGowan was an agent/employee of the Browns. Even the chancellor found that McGowan had an "employee/employer relationship with Mr. Brown." The Alexanders proved their prima facie case of trespass when they obtained a survey of their land and introduced this survey into evidence; proved that McGowan was an employee of the Browns; proved McGowan was on their property on Friday, the day in question; and proved that McGowan destroyed some of their property. For the majority to assume that McGowan was an independent contractor of the Browns is preposterous when absolutely no evidence was presented to support this assumption. The majority also agrees with the Court of Appeals opinion that sufficient evidence was brought forth to tie McGowan to the Alexanders' property on Friday. The Alexanders sufficiently proved an agency relationship between McGowan and the Browns, and this was sufficient for their case to proceed. The Alexanders case for trespass against the Browns should not have been dismissed. For these reasons, I dissent.

¶26. The majority, citing the chancellor and the Court of Appeals opinion, states that, "the Alexanders failed to prove that McGowan was an 'employee' of the Browns. This was an element on which proof was necessary in order for the Alexanders to make a prima facie case of trespass. The failure to establish employment was fatal to the Alexanders' case." The Alexanders did in fact make their prima facie case because they did prove that McGowan was an employee of the Browns, and therefore, was an agent of the Browns.

¶27. An agent's authority may be actual or apparent. Under the law of agency, "a principle is bound by the actions of its agent within the scope of that agent's real or apparent authority." *Ford v. Lamar Life Ins. Co.*, 513 So. 2d 880, 888 (Miss. 1987) (citing *Baxter Porter & Sons Well Servicing Co. v. Venture Oil Corp.*, 488 So. 2d 793 (Miss. 1986); *Parmes v. Illinois Cent. Gulf R.R.*, 440 So. 2d 261 (Miss. 1983); *College Life Ins. Co. of Am. v. Byrd*, 367 So. 2d 929 (Miss. 1979)). If an agent has apparent authority to bind his principle, then the issue of actual authority need not be reached. *Baxter Porter*, 488 So. 2d at 796 (citing *McPherson v. McLendon*, 221 So. 2d 75 (Miss. 1969); *Steen v. Andrews*, 223 Miss. 694, 78 So. 2d 881 (1955)). Apparent authority exists when a reasonably, prudent person with knowledge of the nature and usages of the business involved would be <u>justified in supposing</u> that the agent has the power he is assumed to have. *Ford*, 513 So. 2d at 888 (emphasis added); *see also* ***Bryant, Inc. v. Walters***, 493 So. 2d 933, 937 (Miss. 1986) (stating that, "If an agent wishes to escape personal liability, he is under a positive duty to clearly disclose, and (in the absence of knowledge) <u>not the duty of the third party to find out on his own</u>, that he, the agent, is not acting for himself, but on behalf of a principle.") (citations omitted & emphasis added).

¶28. In ***D.L. Fair Lumber Co. v. Weems***, 196 Miss. 201 (1944), 16 So. 2d 770, 771, a lumber company owned timber that was located on Weems's land. The lumber company planned to cut and remove the timber and obtained permission from Weems to do so. However, Weems requested that if any of the trees were cut and hence, damaged his fence, then the employee/agent of the company, Willis, would repair the fence before leaving the premises, so that Weems's cattle would not escape. ***Id.***

¶29. In ***D.L. Fair Lumber***, we held that

> the owner of the timber standing on the land of another owes the latter the duty to use reasonable care in removing the timber so as not to injure the other's property; and this duty is owed likewise to a tenant of the landowner so far as concerns the possession and use of tenant. The obligation is one put in or raised by the law and results from the relation of the timber owner and the owner of the land at the time of the removal of the timber, **without the necessity of any contract between them so prescribing. The duty, moreover, is nondelegable, else the timber owner would have the power to place its performance in the hands of a party wholly without moral or financial responsibility and thus strip the landowner of any effective remedy for violation of the stated duty, however gross and oppressive, other than a recourse to the nonlegal preventive remedy of force and violence.**
>
> Therefore, the timber owner may not commit the work of the removal of the timber to an independent contractor and thereby escape responsibility for negligent and unnecessary injury to the property of the landowner or his tenant; and as to such injury the so-called independent contractor will be deemed the servant or employee of the timber owner, and the latter will be liable to the landowner or his tenant for negligent and unnecessary injuries to the same extent and as fully as had the damage been done by the timber owner himself.

***Id.*** at 772-73 (emphasis added).

¶30. In ***Long v. Magnolia Hotel Co.***, 227 Miss. 625, 631, 86 So. 2d 493, 495 (1956), a hotel attempted to escape liability for damages caused by bricks and other building materials hanging over Long's property as a result of a tornado and subsequent building repairs. The hotel denied the allegations and further stated that if anyone should be held liable, it should be the construction company, who was an independent contractor for the hotel. The circuit court granted the defendants a peremptory instruction and on appeal, we reversed and remanded for a new trial, stating that, "a landowner who, himself or by others under his direction or permission, negligently or unskillfully performs an act on his premises which may and does inflict injury on an adjoining owner is liable for the damage so caused." ***Id.*** at 496 (citing 2 C.J.S., *Adjoining Landowners*, § 45a, at 38.) The Browns owed this duty of adjoining landowners to the Alexanders in this case.

¶31. In this matter, the Alexanders clearly had adequate and sufficient reason to "suppose" that the bulldozer driver, McGowan, was acting as an apparent agent of the Browns. *See **Ford***, 513 So. 2d at 888. Brown informed Alexander, almost immediately after meeting Alexander for the first time, that he intended to perform construction on Lot 6. Alexander responded that he owned Lot 5 and that he did not want Brown to trespass upon his property. Ms. Alexander and Ms. Kersh testified that they witnessed McGowan using a bulldozer to remove dirt from the Alexanders' property, and Mr. Alexander confronted McGowan while he was working on the property. Upon this conversation, Mr. Alexander asked

McGowan where Mr. Brown was, and McGowan stated that he did not know. However, McGowan stated that he possessed a pager number for Mr. Brown, although he did not have it on his person at the time. In addition, the Court of Appeals opinion and the majority agree that there was sufficient evidence provided linking McGowan to the work done on the Alexanders' property on Friday. It is also undisputed that dirt was removed from the Alexander lot.

¶32. These facts sufficiently meet the requirements to establish an agency relationship between McGowan and the Browns as set forth under the law of agency and of this State. The Alexanders were correct in assuming that McGowan was acting under the apparent authority of the Browns. In addition, the Alexanders had a survey done illustrating the boundaries of their property, Lot 5, and introduced this survey into evidence before the chancellor.

¶33. Contrary to the majority's assertion, the Alexanders proved their prima facie case before the chancellor by proving McGowan's status as an apparent agent of the Browns. If the Browns wished to disagree with this status, they had the option of raising an affirmative defense and pleading that McGowan was an independent contractor. Furthermore, the Browns had a duty to the Alexanders as adjoining landowners, and claiming McGowan was an independent contractor, will not relieve them of this duty. No proof of this independent contractor status was brought before the chancellor, and the Alexanders' case should not have been dismissed. Instead, it should be allowed to proceed to a final determination on the merits.

¶34. For these reasons, I dissent.

**PITTMAN, C.J., AND EASLEY, J., JOIN THIS OPINION.**