¶ 25. The majority errs when it states that the Alexanders failed to prove McGowan was an agent/employee of the Browns. Even the chancellor found that McGowan had an "employee/employer relationship with Mr. Brown." The Alexanders proved their prima facie case of trespass when they obtained a survey of their land and introduced this survey into evidence; proved that McGowan was an employee of the Browns; proved McGowan was on their property on Friday, the day in question; and proved that McGowan destroyed some of their property. For the majority to assume that McGowan was an independent contractor of the Browns is preposterous when absolutely no evidence was presented to support this assumption. The majority also agrees with the Court of Appeals opinion that sufficient evidence was brought forth to tie McGowan to the Alexanders' property on Friday. The Alexanders sufficiently proved an agency relationship between McGowan and the *Page 607 
Browns, and this was sufficient for their case to proceed. The Alexanders case for trespass against the Browns should not have been dismissed. For these reasons, I dissent.
¶ 26. The majority, citing the chancellor and the Court of Appeals opinion, states that, "the Alexanders failed to prove that McGowan was an `employee' of the Browns. This was an element on which proof was necessary in order for the Alexanders to make a prima facie case of trespass. The failure to establish employment was fatal to the Alexanders' case." The Alexanders did in fact make their prima facie case because they did prove that McGowan was an employee of the Browns, and therefore, was an agent of the Browns.
¶ 27. An agent's authority may be actual or apparent. Under the law of agency, "a principle is bound by the actions of its agent within the scope of that agent's real or apparent authority." Ford v. Lamar LifeIns. Co., 513 So.2d 880, 888 (Miss. 1987) (citing Baxter Porter SonsWell Servicing Co. v. Venture Oil Corp., 488 So.2d 793 (Miss. 1986);Parmes v. Illinois Cent. Gulf R.R., 440 So.2d 261 (Miss. 1983); CollegeLife Ins. Co. of Am. v. Byrd, 367 So.2d 929 (Miss. 1979)). If an agent has apparent authority to bind his principle, then the issue of actual authority need not be reached. Baxter Porter, 488 So.2d at 796 (citingMcPherson v. McLendon, 221 So.2d 75 (Miss. 1969); Steen v. Andrews,223 Miss. 694, 78 So.2d 881 (1955)). Apparent authority exists when a reasonably, prudent person with knowledge of the nature and usages of the business involved would be justified in supposing that the agent has the power he is assumed to have. Ford, 513 So.2d at 888 (emphasis added); seealso Bryant, Inc. v. Walters, 493 So.2d 933, 937 (Miss. 1986) (stating that, "If an agent wishes to escape personal liability, he is under a positive duty to clearly disclose, and (in the absence of knowledge) notthe duty of the third party to find out on his own, that he, the agent, is not acting for himself, but on behalf of a principle.") (citations omitted emphasis added).
¶ 28. In D.L. Fair Lumber Co. v. Weems, 196 Miss. 201 (1944),16 So.2d 770, 771, a lumber company owned timber that was located on Weems's land. The lumber company planned to cut and remove the timber and obtained permission from Weems to do so. However, Weems requested that if any of the trees were cut and hence, damaged his fence, then the employee/agent of the company, Willis, would repair the fence before leaving the premises, so that Weems's cattle would not escape. Id.
¶ 29. In D.L. Fair Lumber, we held that
 the owner of the timber standing on the land of another owes the latter the duty to use reasonable care in removing the timber so as not to injure the other's property; and this duty is owed likewise to a tenant of the landowner so far as concerns the possession and use of tenant. The obligation is one put in or raised by the law and results from the relation of the timber owner and the owner of the land at the time of the removal of the timber, without the necessity of any contract between them so prescribing. The duty, moreover, is nondelegable, else the timber owner would have the power to place its performance in the hands of a party wholly without moral or financial responsibility and thus strip the landowner of any effective remedy for violation of the stated duty, however gross and oppressive, other than a recourse to the nonlegal preventive remedy of force and violence. *Page 608 
 Therefore, the timber owner may not commit the work of the removal of the timber to an independent contractor and thereby escape responsibility for negligent and unnecessary injury to the property of the landowner or his tenant; and as to such injury the so-called independent contractor will be deemed the servant or employee of the timber owner, and the latter will be liable to the landowner or his tenant for negligent and unnecessary injuries to the same extent and as fully as had the damage been done by the timber owner himself.
Id. at 772-73 (emphasis added).
¶ 30. In Long v. Magnolia Hotel Co., 227 Miss. 625, 631,86 So.2d 493, 495 (1956), a hotel attempted to escape liability for damages caused by bricks and other building materials hanging over Long's property as a result of a tornado and subsequent building repairs. The hotel denied the allegations and further stated that if anyone should be held liable, it should be the construction company, who was an independent contractor for the hotel. The circuit court granted the defendants a peremptory instruction and on appeal, we reversed and remanded for a new trial, stating that, "a landowner who, himself or by others under his direction or permission, negligently or unskillfully performs an act on his premises which may and does inflict injury on an adjoining owner is liable for the damage so caused." Id. at 496 (citing 2 C.J.S., Adjoining Landowners, § 45a, at 38.) The Browns owed this duty of adjoining landowners to the Alexanders in this case.
¶ 31. In this matter, the Alexanders clearly had adequate and sufficient reason to "suppose" that the bulldozer driver, McGowan, was acting as an apparent agent of the Browns. See Ford, 513 So.2d at 888. Brown informed Alexander, almost immediately after meeting Alexander for the first time, that he intended to perform construction on Lot 6. Alexander responded that he owned Lot 5 and that he did not want Brown to trespass upon his property. Ms. Alexander and Ms. Kersh testified that they witnessed McGowan using a bulldozer to remove dirt from the Alexanders' property, and Mr. Alexander confronted McGowan while he was working on the property. Upon this conversation, Mr. Alexander asked McGowan where Mr. Brown was, and McGowan stated that he did not know. However, McGowan stated that he possessed a pager number for Mr. Brown, although he did not have it on his person at the time. In addition, the Court of Appeals opinion and the majority agree that there was sufficient evidence provided linking McGowan to the work done on the Alexanders' property on Friday. It is also undisputed that dirt was removed from the Alexander lot.
¶ 32. These facts sufficiently meet the requirements to establish an agency relationship between McGowan and the Browns as set forth under the law of agency and of this State. The Alexanders were correct in assuming that McGowan was acting under the apparent authority of the Browns. In addition, the Alexanders had a survey done illustrating the boundaries of their property, Lot 5, and introduced this survey into evidence before the chancellor.
¶ 33. Contrary to the majority's assertion, the Alexanders proved their prima facie case before the chancellor by proving McGowan's status as an apparent agent of the Browns. If the Browns wished to disagree with this status, they had the option of raising an affirmative defense and pleading that McGowan was an independent contractor. Furthermore, the Browns had a duty to the Alexanders as adjoining landowners, and claiming *Page 609 
McGowan was an independent contractor, will not relieve them of this duty. No proof of this independent contractor status was brought before the chancellor, and the Alexanders' case should not have been dismissed. Instead, it should be allowed to proceed to a final determination on the merits.
¶ 34. For these reasons, I dissent.
PITTMAN, C.J., AND EASLEY, J., JOIN THIS OPINION.