956 So.2d 1055 (2007)
Jesse Carmichael GALLEGOS and Greg V. Gallegos, Appellants
v.
MID-SOUTH MORTGAGE & INVESTMENT, INC., David C. Hand, Randall K. Fisher and R.G. Thomas, Appellees.
No. 2005-CA-01521-COA.
Court of Appeals of Mississippi.
May 8, 2007.
*1056 Daniel M. Czamanske David A. Burns, attorneys for appellants.
Gary B. Jones, Meridian, attorneys for appellees.
David C. Hand, pro se.
Randall K. Fisher, pro se.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Jesse Carmichael Gallegos and Greg V. Gallegos appeal the chancellor's decision to grant the appellees' Mississippi Rule of Civil Procedure 41(b) motion to dismiss following the presentation of the Gallegos' case-in-chief at trial. The Gallegos' sole issue on appeal is whether the chancellor erred in granting the motion to dismiss. Finding no error, this Court affirms.

FACTS
¶ 2. Jesse Gallegos is a bookkeeper with a local bank. At the time of the trial, she had twenty years' experience at that bank, in which she did general bookkeeping and where she had previously worked as a key punch operator. Her husband, Greg Gallegos, was retired from the military and worked for a local aviation company. Jesse owned four adjoining parcels of land in Lauderdale County, which totaled more than forty-nine acres. Three of the parcels were inherited from her mother, and she had purchased the last one herself.
¶ 3. On June 29, 2000, the Gallegoses were facing foreclosure on a property that is not the subject of this action. The foreclosure was scheduled for the following *1057 dayJune 30, 2000. Jesse had a chance encounter with Appellee R.G. (Gail) Thomas on June 29 and mentioned that she needed some money to stop the foreclosure. Thomas suggested a timber option on the four parcels of land that Jesse owned and which were not subject to the foreclosure scheduled for June 30, 2000. Thomas then approached Appellees David Hand and Randall Fisher, who were partners in a company called Mid-South Mortgage & Investment, Inc., to see if they were interested in the option. Thomas had served as an agent for Hand and Fisher prior to this date and ordinarily received a finder's fee for her services. Hand and Fisher agreed to supply the money to purchase the timber option.
¶ 4. That afternoon, Jesse and Thomas signed a fifteen-day timber option contract on two of the four parcels. Jesse received $3,000 for the option, which was used to stop the foreclosure on the unrelated property. According to the contract, Jesse would receive an additional $22,000 if Thomas "or her assigns" decided to exercise the option. On June 30, 2000, Jesse and Thomas signed another option contract. The new contract provided for a timber option on all four parcels of property, as opposed to the two parcels named in the first contract, and extended the expiration date of the option from fifteen days to two years.
¶ 5. Shortly thereafter, Hand and Fisher viewed the property with Greg Gallegos. After seeing the property but without having a professional estimateknown as a "timber cruise"done, Hand and Fisher decided to exercise the option. They arranged for payment of the additional $22,000 to Jesse. After Hand and Fisher, through their company Mid-South Mortgage & Investments, Inc., paid the back taxes and other outstanding liens on the property, Jesse received a check for $7,575. Jesse executed the timber warranty deed to "R.G. Thomas and/or his [sic] assigns" on July 13, 2000.
¶6. Hand and Fisher immediately began plans to remove the timber from Jesse's land. They quickly discovered, however, that the value of the timber was far less than the $25,000 that they had paid for it. They expressed their displeasure to Thomas, who in turn contacted Jesse and informed her that Hand and Fisher were unhappy with the deal and wished to speak with her. Jesse testified that Thomas came to her house "and she had a piece of paper and she had 35,000 some dollars and she said you have got to pay this back. This is what you owe and thisand you have got to find a way to pay this back."
¶7. Jesse met with Hand and Fisher at Mid-South's office on July 27, 2000. Jesse testified that Hand and Fisher "told me that I had to put my land up for the amount of money that I got. That they had to have their money back and I had to put my land up." Jesse testified further that she "did feel that the money should be paid back. I didn't feel that I had misrepresented the land lines or the timber, but I did get the $25,000." At that meeting, Hand and Fisher, acting as Mid-South, provided her with the option to sign a promissory note for $35,733. Jesse declined to sign the note, stating that she needed to discuss the matter with her husband. Two days later, she signed the promissory note and executed a deed of trust to Mid-South and Fisher naming three of the four parcels cited in the timber deed as security for the promissory note.
¶ 8. Both Hand and Fisher testified that when Jesse signed the promissory note, she received $10,000 in cash. The chancellor heard testimony regarding the discrepancy between the first payment to Jesse, which was made by check, and this second, *1058 larger payment, which Hand and Fisher stated was made in cash, with only the promissory note as a receipt for the payment. Hand testified that he made the payment in cash because that was how Jesse wanted it done. He denied that to make such a large payment in cash was a bad business practice, stating, "I can say this, that is not the first time I have done cash deals before." Fisher also testified that he did not believe that making such a payment in cash would necessarily present a problem and cited the promissory note as the receipt. Jesse denied receiving this money, but she could not explain why she signed a promissory note for $10,733 more than the value she had received from the timber option contract, other than to state that Hand and Fisher promised her a "breakdown" of the amounts borrowed but never provided her with that information.
¶ 9. Following the signing of the promissory note on July 29, 2000, Jesse never made a payment on the note. On November 1, 2000, a corrected deed of trust, signed by Jesse, naming Mid-South and Fisher as recipients of the deed, and naming all four of the parcels at issue, was recorded. Jesse contends that her signature on this deed of trust is forged. On November 3, 2000, Mid-South and Fisher began foreclosure proceedings on Jesse's property.
¶ 10. Soon after Mid-South and Fisher initiated the foreclosure proceedings, William J. Ross[1] approached Jesse and offered to loan her the money to stop the foreclosure proceedings in exchange for a deed of trust on the four parcels. On November 27, 2000, Thomas conveyed her interest in the timber deed to Ross. That same day, Jesse executed a warranty deed to Ross, and Ross executed an option to purchase the four parcels for $42,500. Once Ross had received the warranty deed, he then executed a quitclaim deed to Thomas, which gave her a one-third interest in the four parcels.
¶ 11. On November 29, 2000, Jesse signed a promissory note for $10,000 to Ross, with the understanding that Ross would use the money to save her property from foreclosure. Jesse testified that she never received the money, but she executed a deed of trust to Ross as security for the note. Ross then gave Jesse an option to purchase the property for $70,000. Under the terms of that option contract, if Jesse opted to re-purchase her property, Ross would convey the property to her free and clear of the timber warranty deed.
¶ 12. Jesse then executed a second warranty deed to Ross and entered into a contract with Ross whereby she agreed to give Ross any proceeds that she received from the foreclosure, up to $100,000, if Ross was the successful bidder at foreclosure. Jesse then executed an escrow agreement that stated Ross' first warranty deed would not be filed unless she failed to re-pay the $10,000 promissory note in ninety days. Despite the escrow agreement, however, Jesse immediately wrote a note in longhand that delivered the first warranty deed to Ross.
¶ 13. The foreclosure did occur at the end of November 2000. Appellee Fiddle, Inc., a company owned by Ross, bought the property for $45,726.22. Jesse testified that on the day of the foreclosure sale, she was in Ross' office. She further testified *1059 that she believed that he was using the $10,000 from the promissory note she signed with him to redeem the property and stop the foreclosure sale. On December 22, 2000, Jesse executed a quitclaim deed to Fiddle, Inc. In that deed, which Jesse testified that Ross requested she execute, the parties agreed to hold each other harmless for any actions taken by either party with respect to the foreclosure on the four parcels of property. According to the record, Ross was still the owner of the property at the time of the trial.

STANDARD OF REVIEW
¶ 14. The standard of review for a motion to dismiss under Mississippi Rule of Civil Procedure 41(b) is as follows:
In considering a motion to dismiss, the judge should consider "the evidence fairly, as distinguished from in the light most favorable to the Plaintiff," and the judge should dismiss the case if it would find for the defendant. "The court must deny a motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." "This Court applies the substantial evidence/manifest error standards to an appeal of a grant or denial of a motion to dismiss pursuant to M.R.C.P. 41(b)."
Alexander v. Brown, 793 So.2d 601, 601(¶ 6) (Miss.2001) (citing Stewart v. Merchants Nat'l Bank, 700 So.2d 255, 258 (Miss.1997)).
¶ 15. With regard to this Court's review of the chancellor's findings of fact, "[t]his Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 8) (Miss.2002).

ANALYSIS
¶ 16. In her order, the chancellor found that Jesse and Greg Gallegos failed to meet the burden of proof regarding several of the allegations in their complaint. Specifically, the chancellor found that the evidence did not support a finding that Jesse did not receive $10,000 from Mid-South following the signing of the promissory note on July 29, 2000. She also failed to prove her claim that the corrected deed of trust adding the fourth parcel of land and recorded on November 1, 2000, was a forgery. The chancellor held that Jesse's testimony was uncorroborated and that she had failed to introduce expert testimony to establish that the signature on the deed was not hers.
¶ 17. The Gallegos' complaint asserted both fraud and intentional misrepresentation. The elements of fraud are as follows:
(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.
Hobbs Auto., Inc. v. Dorsey, 914 So.2d 148, 153(¶ 18) (Miss.2005) (citation omitted). The elements of intentional misrepresentation are identical to the elements of fraud. Southeastern Med. Supply v. Boyles, Moak & Brickell Ins., 822 So.2d 323, 330(¶ 29) (Miss.Ct.App.2002). The elements of fraud and intentional misrepresentation must be proven by clear and convincing evidence. Hobbs, 914 So.2d at 160(¶ 61).
*1060 ¶ 18. With regard to the elements of fraud, the chancellor found that while Hand and Fisher "certainly wanted Mrs. Gallegos to bail them out of a bad timber deal by signing the promissory note and deed of trust," there was no evidence that they made false statements to her to persuade her to return their money. Additionally, the chancellor found that Jesse "did certainly feel that she owed them some money by virtue of the fact that she had received $25,000."
¶ 19. The Court agrees that the evidence presented during the Gallegos' case-in-chief failed to prove that Hand, Fisher, or Thomas made a false representation to Jesse. Jesse's vague statements that she "had to put my land up for the amount of money that I got" and that she "had to get the money up some kind of way" fail to prove by clear and convincing evidence that Hand, Fisher, or Thomas made a false representation to Jesse Gallegos concerning her obligation, if any, to undo the timber option contract.
¶ 20. Failure to prove any of the elements of fraud or intentional misrepresentation was grounds for the chancellor to grant the Rule 41(b) motion to dismiss. Accordingly, the Court affirms the chancellor's decision to grant the motion to dismiss on the counts of fraud and intentional misrepresentation.
¶ 21. As to the charge of conspiracy alleged in the complaint, the chancellor found that Jesse and Greg Gallegos presented no proof that Hand, Fisher, and Thomas conspired to defraud Jesse or take her property. Further, the chancellor found that there was no proof of an act of fraud or damages. Finally, the chancellor found that there was no evidence that the alleged conspirators knowingly entered into "a common plan" with the intent "to further its common purpose."
¶ 22. Conspiracy requires a finding of "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result." Gallagher Bassett Servs. v. Jeffcoat, 887 So.2d 777, 786(¶ 36) (Miss.2004). It is imperative that a plaintiff asserting a cause of action for conspiracy prove that the parties had an agreement, either to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully. Id.
¶ 23. In the case sub judice, the chancellor found that the Gallegoses presented no evidence of an agreement among the three defendants and no evidence of an unlawful purpose or an agreement to undo the timber contract unlawfully. Based on the Court's review of the evidence under the substantial or manifest error standard, the Court must affirm the chancellor's decision. The evidence did not prove that Hand, Fisher, and Thomasor any combination of the threeconspired to take Jesse Gallegos' property. To the contrary, Jesse's own testimony states that the timber contract arose over a chance encounter. Additionally, the evidence does not show that there was an agreement to take the property, only an attempt on the part of Hand and Fisher to undo a bad business decision. When Hand and Fisher did have the property, they foreclosed on it after Jesse failed to meet her obligations under the terms of the promissory note.
¶ 24. Finally, the chancellor determined that there was no conspiracy between Hand and Fisher to defraud Jesse with regard to the promissory note. The chancellor concluded that Jesse did, in fact, receive $10,000 from the signing of the promissory note. As the chancellor noted in her ruling, "I find it very difficult to believe that Mrs. Gallegos would have *1061 gone into Mid-South and signed that document without receiving some additional monies. . . ."
¶ 25. It is the province of the chancellor, sitting as the finder of fact, to weigh the testimony of witnesses and to draw conclusions regarding the credibility of witnesses, and those findings will not be disturbed unless unsupported by substantial evidence or manifestly erroneous. See Owen v. Owen, 928 So.2d 156, 168(¶ 35) (Miss.2005). Hand and Fisher testified that Jesse did receive $10,000 after signing the promissory note, and Jesse testified that she did not receive any money. Jesse also testified that she had twenty years experience at a bank, where she worked as a bookkeeper, a fact which likely impacted the chancellor's conclusions on this issue. Additionally, no documentary evidence, other than the promissory note itself, was presented to the chancellor. On the basis of this evidence, this Court cannot find that the chancellor committed manifest error in believing the testimony of Hand and Fisher. Accordingly, the chancellor did not err in concluding that there was no conspiracy to take money from Jesse by having her sign the $35,733 promissory note.
¶ 26. The chain of events in this case, the testimony regarding the Gallegos' persistent money troubles, and Jesse's accusations of forgery and fraud with regard to the $35,733 promissory note raise serious questions for this Court. Although the chancellor concluded that Hand and Fisher simply were seeking to reverse a bad business decision, this Court perceives that Hand and Fisher, and possibly Thomas, were operating with more sinister motives following their discovery of the lack of value in the timber on Jesse's property. Had this Court been the court of first impression in this case, the Court would, at the very least, have determined that the Gallegos' case-in-chief raised questions that required the Appellees' to present evidence in defense of their actions. However, the Court is required to follow the applicable standard of review. In this case, the Court is limited to a substantial evidence/manifest error standard, with regard to both the chancellor's findings of fact and the chancellor's decision to grant the Rule 41(b) motion to dismiss. Under that limited standard, the Court cannot say that the chancellor erred in granting the motion or that her findings of fact are not supported by the evidence.
¶ 27. Because the chancellor's conclusion that Jesse and Greg Gallegos failed to meet their burden of proof on their causes of action for fraud, intentional misrepresentation, and conspiracy is supported by substantial evidence and is not manifestly erroneous, this Court affirms the chancellor's decision to grant the defendants' motion to dismiss under Mississippi Rule of Civil Procedure 41(b). The decision of the chancellor is affirmed.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF LAUDERDALE COUNTY IS AFFIRMED. ALL COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] William J. Ross and his companies, Fiddle, Inc. and Topton Air Estates, Inc., were named in the complaint as defendants. It appears from the docket sheet that these defendants were dismissed by an order granting them summary judgment, but those documents are not included in the record before this Court. Counsel for Jesse and Greg Gallegos also alluded to the dismissal of Ross and his companies during the course of the trial.